GRIGGS FURNITURE COMPANY,
Appellant,

v.

Larry BUFKIN et ux. and E. F.
Forrester, Appellees.

No. 7072.

Court of Civil Appeals of Texas.

Amarillo.

June 26, 1961.

Rehearing Denied Sept. 5, 1961.

Crenshaw, Dupree & Milam, Lubbock, for appellant.

Splawn & Maner, Key, Carr, Carr & Clark, Lubbock, for appellees.

NORTHCUTT, Justice.

On January 9, 1960, Larry B. Bufkin and wife, Neva Bufkin, brought suit against Griggs Furniture Company alleging that on October 20, 1959, they had moved into their home they had contracted to buy from E. F. Forrester and had purchased new furniture from Griggs Furniture Company to be placed in said house. They also alleged that among the items of furniture and appliances they had bought was a Roper gas range;

and that on October 20, 1959, two employees of Griggs Furniture Company installed the Roper gas range in the house and that about 4:51 A.M. on October 21, 1959, there was a terrific and violent explosion and fire caused by the accumulation of gas leaking, which had come from the Roper gas range that had been negligently installed by the employees of Griggs Furniture Company, and the same caused plaintiffs to be severely burned and their property destroyed.

Plaintiffs alleged five acts of negligence on the part of said employees as follows: negligence in installing the gas range in such a manner as to cause it to leak gas and cause an explosion and fire which thereby injured the plaintiffs; negligence in installing the gas range with the connection which defendant knew or should have known was defective; negligence in using aluminum fittings with rubber ferrel, rather than a proper flange joint; negligence in failing to properly tighten the connection after installing thereby allowing gas to escape and causing the explosion and injuries to the plaintiffs; and negligence in failing to properly inspect the stove connection after installing the same.

On January 19, 1960, E. F. Forrester filed suit against Griggs Furniture Company for damages for the destruction of the house mentioned in the Bufkin suit. Forrester alleged that said employees were negligent as follows: in supplying connections and fittings for installation of said range which they knew, or by the exercise of ordinary care should have known, were defective; in installing the range with fittings which they knew, or through exercise of ordinary care should have known, were defective; in failing to tighten the gas connection on said range sufficiently to insure that it would not pull loose and allow gas to escape; in failing to tighten the connection on the range sufficiently to insure it would not leak natural gas; in failing to inspect the range following the installation to insure that it would not become disconnected from the gas pipe or leak gas; in installing the gas range with an aluminum fitting with a rubber ferrel rather than a proper flange joint; in installing the range in such a manner that it would leak gas in the house and cause an explosion; and in installing the range in such a manner that the aluminum connection would pull away from the gas range and allow gas to escape into the house.

These two cases were consolidated and tried as one case and submitted to a jury upon special issues. The jury found that Griggs Furniture Company through its employee, Thigpen, failed to properly tighten the flexible connection onto the Roper gas range thereby permitting natural gas to escape into the Bufkin house at the time and on the occasion in question; that defendant failed to properly inspect the gas range connections after same had been installed; and that defendant improperly shaped and connected the flexible tube during installation of the Roper gas range at the time and on the occasion in question; and then found each of the acts was negligence and a proximate cause of the explosion and the damages. There were other issues submitted but it was upon the findings here related that judgment was granted for the plaintiffs. From that judgment the defendant perfected this appeal and will hereafter be referred to as appellant and the plaintiffs as appellees.

By appellant's first two points of error it is contended that the court erred in refusing to permit appellant to introduce into the evidence a written proof of loss made by Stevens, construction manager for Forrester and in charge of the construction of the Bufkin house who also kept the books for Forrester as to cost of construction which it was contended was inconsistent with Stevens testimony on the trial of the case, and in refusing to permit appellant to cross examine Stevens in connection with the proof of loss that appellant contended was inconsistent with Stevens testimony at the time of the trial as being a denial of proper cross examina-

tion for impeachment purposes. Forrester carried insurance upon the building in question. After the house had been wrecked by the explosion and had been rebuilt, Stevens filed a proof of loss with the insurance company for the total sum of $5,777.04 which included $200 for Stevens which he was allowed on each house constructed for Forrester. This proof of loss was sworn to by Stevens. On the trial Stevens testified that he kept the records as to the cost and was the custodian of those records and that the record shows the damage as $5,995.48 and did not include the $200. The jury found Forrester was damaged $5,995.48 as testified to by Stevens. Forrester admitted that Stevens was the person to give the information as to the damage caused by the explosion to the building. Appellant attempted to introduce a proof of loss that had been filed by Stevens with the insurance company for "Whole Loss and Damage" in the sum of $5,777.04 which proof of loss included $200 allowed Stevens for each house built.

Appellees objected to the introduction of this evidence on the ground it would show Forrester had insurance and that it would be error to permit the question of insurance to enter the case. The court sustained appellees' objection and refused to permit appellant to show the proof of loss had been made in the total sum of $5,777.04. Appellant, out of the hearing of the jury and to perfect the bill, tendered the evidence of Stevens that Forrester had a builder's risk policy on the building in the sum of $8,000; that after the explosion Stevens, as attorney in fact, made a claim to Maryland Casualty Co. for Forrester's total claim of loss in the sum of $5,777.04 and that the same was paid by Maryland Casualty Co. and the claim included the "project manager's contract" fee of $200 and that the $200 was paid to Forrester.

We are of the opinion that the itemized proof of the "Whole Loss and Damage" as presented to the insurance company by Stevens and sworn to by him is a declaration against interest and is also admissible

for impeachment purposes. The fact that in one place where he was sworn he contended the whole damage was $5,777.04 and swearing before the jury as to different damage and that he was not given $200 for rebuilding the house would become very important from the standpoint of the defense. McDonald v. Alamo Motor Lines, Tex.Civ.App., 222 S.W.2d 1013; Moore et al. v. Dallas Ry. & Terminal Co., Tex.Civ. App., 238 S.W.2d 741 (wr. dis.); Aguilera et al. v. Reynolds Well Service, Inc., Tex. Civ.App., 234 S.W.2d 282 (wr. ref.). We think this case at bar is different from the case of Ricks v. Smith et ux., Tex.Civ.App., 204 S.W.2d 12 as that was a compromise and not a proof of actual damages.

It is stated in the case of Cheshire v. Dow Chemical Co. et al., Tex.Civ.App., 319 S.W.2d 358, 361 (wr. ref., N.R.E.) as follows:

"[2] Plaintiff's fourth contention is levelled at the action of the Trial Court in admitting evidence which tended to show that plaintiff was covered by Workmen's Compensation insurance. In this case the Trial Court permitted defendants' attorney to cross-examine the plaintiff with reference to discrepancies between his description of his injuries on direct examination and his description of his injuries made on notice of injury and claim blanks filed by plaintiff with the Industrial Accident Board in connection with the claim. The Trial Court further permitted cross-examination of plaintiff concerning discrepancies between his testimony in the instant case and in depositions given by him in connection with his prior claim for the selfsame injuries before the Industrial Accident Board. We do not think the Trial Court committed error. Defendants were entitled to impeach plaintiff through prior inconsistent statements and show the circumstances surrounding the prior statements in order to give them credence. The fact that the

impeaching materials collaterally reflected the plaintiff's prior compensation claim did not, and could not, render the evidence inadmissible."

■ We think the court erred in not permitting the appellant to introduce the evidence showing the statement made by Stevens that the damage was $5,777.04 even though the question of insurance might be shown. It is competent for either party to show the interest taken in the case by a material witness for the opposite party and this may be done on cross examination of the witness himself but we do not believe that this would apply to Bufkin's claim. Moore et al. v. Dallas Ry. & Terminal Co., Tex.Civ.App., 238 S.W.2d 741 (wr. dis.); West Texas State Bank v. Tri-Service Drilling Co., Tex.Civ.App., 339 S.W.2d 249 (wr. ref., N.R.E.).

■ Under appellant's group two of points of error it is contended the court erred in permitting Thorp to testify that the gas lines had been tested and approved by the city, since such testimony was entirely hearsay and highly prejudicial through the eyes of appellant. We believe there is other testimony that rendered this evidence harmless and overrule this point.

The witness Black was called by appellees as an expert witness as to the cause of fires and explosions in connection therewith. On direct questioning by appellees, Black was asked:

"From the standpoint of the type of connections, and from your experience in examining and investigating connections and flexible tubes in the hookup of appliances, would you give the jury your opinion as to whether or not, from your own investigation, that that was a safe and efficient connection there on that stove?"

His answer was:

"No, sir."

Appellant objected to the question on the ground that the witness had not shown himself qualified in that field. The court overruled the objection and appellant accepted. By appellant's sixth point of error it is contended the court erred in admitting this evidence.

■ The witness then proceeded to testify that Thigpen made the elbow too short and bent it in the wrong place and thereby that was not a safe and efficient connection. Four days *later* the appellees filed trial amendments stating the employees of Griggs Furniture Co. were guilty of negligence for placing an improper bend at the wrong location of the flexible hose connection thereby placing said hose connection in a severe strain and causing a defective connection which was negligence and a proximate cause for damages sustained. At the time the objection was made, naturally the appellant would not call to the appellees' attention there were no pleadings as to wrongfully bending the pipe connection and be in a position of calling to their attention another issue of negligence they might plead. The question then arises as to whether the objection was sufficient to call the court's attention to the effect of appellant's objection. Probative force is not given to incompetent and irrelevant evidence by failure to object. A general objection is sufficient to entitle this court to review the ruling admitting testimony when the question asked could elicit only incompetent and immaterial testimony. Texas Employers Insurance Ass'n v. Shiflet, Tex. Civ.App., 276 S.W.2d 942, at page 947 (wr. ref., N.R.E.).

As to appellant's objection that the witness was not shown qualified in that field, the witness testified that he had never in his life seen a connection like this one in question and assumed it was basically copper coated and in reaching his opinion he assumed that the flexible tubing was chrome over copper and the undisputed testimony is that the tubing was aluminum.

The question asked the jury was:

"Do you find from a preponderance of the evidence that defendant, through its employee, Thigpen, improperly shaped and connected the flexible tube during installation of the Roper gas range at the time and on the occasion in question?"

■ We think the expert witness, Black, could testify as to what he found from his investigation but could not testify that his opinion was that the connection was not a safe and efficient connection because it was improperly shaped or bent, and that was the effect of his testimony, because that was the precise question for determination by the jury. We think this evidence clearly invaded the province of the jury and was, therefore, improperly admitted. Phoenix Assurance Co. of London v. Stobaugh, 127 Tex. 308, 94 S.W.2d 428 by Com. of App. and opinion adopted by the Sup.Ct.; Jenkins v. Hennigan, Tex.Civ.App., 298 S.W. 2d 905 (wr. ref., N.R.E.); Carroll v. Magnolia Petroleum Co., 223 F.2d 657 by Fifth Circuit; Farris et al. v. Interstate Circuit, 116 F.2d 409 by the Fifth Circuit. We sustain appellant's sixth point of error.

■ By appellant's point nine it is contended the court erred in submitting special issues 1, 2, and 3 in that there was no evidence of probative force to support such issues and point eleven is to the same effect as to special issues 4, 5, and 6. Special Issue I inquires whether Thigpen failed to properly tighten the flexible connection and Special Issue IV inquires whether Thigpen failed to properly inspect the gas range connections as the same had been installed. Special Issues Nos. 2, 3, 5 and 6 present the issues as to negligence and proximate cause as to issues 1 and 4. We do not think there is any evidence of probative force to authorize the submission of these issues and sustain appellant's ninth and eleventh points of error. Appellant's other assignments of error are overruled. For the reasons above mentioned, we think the case should be reversed for another trial. Judgment of the trial court is reversed and remanded.