DELHI GAS PIPELINE COMPANY, Appellant,

v.

Lloyd M. MANGUM et ux., Appellees.

No. 734.

Court of Civil Appeals of Texas, Tyler.

March 28, 1974.

632

Jackson, Walker, Winstead, Cantwell & Miller, Jack Pew, Jr., Robert F. Ruckman, Dallas, for appellant.

Wynne & Wynne, Wills Point, Elliott & Bass, Clyde Elliott, Jr., Canton, for appellees.

McKAY, Justice.

This appeal comes to us from an eminent domain proceeding brought by Delhi Gas Pipeline Company, appellant-condemnor, against Lloyd M. Mangum and wife, Annie Mangum, appellees, in the County Court of Van Zandt County, Texas. Appellant has condemned a gas pipeline easement across an eighty-one acre tract owned by appellees and located in Van Zandt County, Texas. The easement consists of approximately two acres of land, 50 feet wide and 1638 feet long. It runs generally north to south on the western side of the Mangum tract with approximately 20 acres of the tract to the west of the pipeline and some 60 acres to the east side of the easement. Appellees maintain a three bedroom brick home on the tract located about 300 feet east of the pipeline easement. Immediately behind their residence is a barn and a cow shed. Also a dog kennel is situated in the general vicinity just a few feet from the eastern edge of the easement line. The remainder of the tract is used primarily for cattle grazing.

The right-of-way easement houses a pipeline 12¾ inches in outside diameter, buried thirty-six inches under the ground. Admittedly, the gas transported through the line contains approximately 3.2 per cent hydrogen sulfide, a lethal poison. It is the dangerous nature of this line and the fear created by its presence on the land which generate the entire controversy of this appeal.

In answer to special issues, the jury found: (1) the per acre value of the property actually taken for the easement before the taking was $850.00; (2) the per acre value of the property actually taken for the easement after the taking was $100.00; (3) the per acre value of the remainder before taking was $850.00; and (4) the per acre value of the remainder after the taking was $600.00. Upon this verdict—that the two-acre easement was damaged $750.00 per acre and the 79-acre remainder was damaged $250.00 per acre, the trial court rendered judgment for appellees in the amount of $21,250.00, less deposits. The real controversy does not concern the condemned land, but rather the amount of loss in market value suffered to the remainder of the tract. Appellant contends the jury found the difference in the market value after installation of the pipeline to be too great because the trial court erroneously allowed inadmissible and inflammatory evidence to be presented during the trial. We reverse and remand for a new trial.

Appellant's first three points of error are concerned with testimony given by the appellees' witness, Robinson, a real estate expert, about a pipeline rupture just south of Edgewood, Texas, which he investigated a few days following the incident. Appellant complains that Robinson's testimony about rupture of a Pan American pipeline near Edgewood was (1) hearsay; (2) there was no evidence that the same situation existed there as the pipeline here; and (3) that such testimony was not relevant to the market value of the tract involved here.

Before Robinson testified about the Edgewood pipeline rupture, the trial court allowed the appellant to conduct a voir dire examination of him. After a number of fruitless questions, the following took place:

"Q Well, your knowledge of what took place is gained from what people told you, isn't it?

"A To a great extent. That and what I saw.

"MR. HARTMAN: We make an objection then. It is all hearsay.

"THE WITNESS: And what I read in the paper.

"MR. HARTMAN: The objection we make, Your Honor, is to hearsay."

The objection was overruled and Robinson was allowed to testify that ten head of cattle, two dogs and a cat were killed by the poisonous fumes escaping from the leak. He further related that "Tommy Reid and his family live right across the road from where this happened, just a short distance, and during the night they smelled some odor, they had an idea what it was, but they didn't know for sure. So they got up and left home and I think possibly went to her folks, and of course, they went off in a hurry and forgot all their pets, and when they returned home the next day, their pets were dead. Also, ten head of cattle in the pasture." On cross-examination Robinson admitted much of his testimony was based on what the Reid boy told him.

▇▇▇ Appellees contend the testimony of Robinson was not hearsay because it was not offered to prove the truth of the fact that a rupture had occurred, but rather, was offered in support of his opinion that the rupture had caused a decrease in the market value, and to show a fear of pipelines on the part of the buying public which diminishes the value of land. Under the circumstances presented by this record, it appears such evidence was offered for the truth of the matter asserted, or, in any event, had such effect. We do agree that depreciation of market value of property due to a fear of pipelines is an admissible element of damage provided that proper predicate has been laid. However, this by no means condones the use of hearsay testimony to relate the detailed facts of such explosions. We recognize a certain line of authority in Texas which allows an expert real estate appraiser the use of hearsay testimony to explain the basis of his opinion as to value (actually the evidence is said not to be hearsay in the true sense). State v. Oakley, 163 Tex. 463, 356 S.W.2d 909 (1962). But in these cases the only

hearsay testimony which is allowed to explain an appraiser's opinion is that concerning the values in comparable property sales. The objectionable testimony of Robinson did not concern comparable property values; rather it dealt with specific details of other explosions based primarily on what others had told him and what he read in the newspapers. We see no need to enlarge the real estate appraiser's use of hearsay. Due to the nature of this hearsay testimony we feel it probably did influence the jury and resulted in the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure.

In points four and five appellant complains of the testimony of the witness Lahecka concerning a Phillips Petroleum pipeline rupture near Austin, Texas, which killed six people, melted four or five automobiles, burned fence posts and melted steel bridge pipes more than one-half mile away because (4) there was no evidence that the same situation existed as in the pipeline here; (5) such testimony was not relevant to the market value of the tract here. In points six and seven complaint is made that Lahecka's testimony concerning the Pan American pipeline rupture near Edgewood showed no evidence that the same situation exists with the Delhi line; and that such testimony was not relevant to the market value of the tract involved here. Appellant argues that a reasonable similarity has not been shown between the Delhi line and either of the other two lines, and until this has been done, testimony as to these pipelines or their ruptures or explosions is not relevant to the issue of market value of the remainder property in question.

The problem presented here is concerned with the fear of the danger of pipelines carrying gas, that is, whether evidence of the rupture or explosion of one pipeline may be offered as an element affecting the market value of land crossed by another pipeline, and if so, how such evidence may be admissible in a condemnation case such as this. There is little authority on this

question, and there seems to be none directly in point.

■ There is Texas authority that fear of pipelines can be taken into consideration as an element of damage affecting the market value of land in condemnation suits provided there exists actual danger of future leaks, ruptures or explosions, and the land suffers a present depreciation in value. Delhi Gas Pipeline Company v. Reid, 488 S.W.2d 612 (Tex.Civ.App.—Waco, 1972, writ ref'd, n.r.e.); Buzzard v. Mapco, Inc., 499 S.W.2d 352 (Tex.Civ.App.—Amarillo, 1973, writ ref'd, n.r.e.). If the requirements of the Reid case are met, the fear of gas transmission pipelines becomes a proper element of damage to be considered. See 38 A.L.R.2d p. 801, Sec. 8 and 4A Nichols on Eminent Domain, Sec. 14.-241(1).

■ Under the Buzzard case evidence may be admitted whether a pipeline is transporting dangerous or harmful substances or products. However, there seems to be no Texas authority or guidelines or rules by which evidence of specific instances of pipeline ruptures or leaks or explosions, such as the rupture at Edgewood or the one near Austin, would become admissible. It is apparent that evidence of ruptures or explosions of pipelines under different circumstances or which were unrelated or unlike in characteristics or in products transported through the line in question and which would not affect the market value of the land involved would be prejudicial to the condemnor and inadmissible.

■ We believe that a similarity of characteristics between the pipeline on appellees' property and the one sought to be compared with it must be shown before evidence of rupture or explosion would be admissible. In Delhi Gas Pipeline Co. v. Reid, supra, the court was faced with this problem. The court there pointed out the record indicated *some similarity* between the two pipelines and held that evidence of

the ruptured pipeline admissible. We do not know what the similarity was in *Reid*, but in our opinion proof of *some similarity* is not sufficient to allow the introduction of irrelevant and prejudicial testimony of what happened on another pipeline to be presented before a jury. We believe that evidence that two pipelines are generally similar in their important or essential characteristics so that they are alike in the main, or with regard to the overall picture, must be presented before evidence of a rupture or explosion of one of them may be offered in a condemnation case such as this. Gulledge v. Texas Gas Transmission Corp., 256 S.W.2d 349 (Court of Appeals, Kentucky, 1953).

■■ We believe the test for admissibility of such evidence as set out in *Gulledge* is a reasonable one: "(1) That there is a basis in reason and experience for a fear of explosion; (2) that such a fear enters into the calculations of a substantial number of persons who deal in the buying and selling of similar property; and (3) depreciation of market value because of the existence of such fear." Where the proof fails to show the two pipelines are generally similar in their essential characteristics, then proof of an explosion on one line offers no reasonable basis for depreciating the market value of the land housing the dissimilar line; therefore, proof showing only that an explosion occurred on another pipeline would not be admissible.

The admission by the trial court in the instant case of evidence of a rupture of the Phillips pipeline near Austin was reversible error because that line was not shown to have been generally similar in characteristics to the Delhi line.

Appellees argue that appellant's witness Mooney testified without objection about the Phillips line rupture and explosion near Austin, and therefore the previous testimony of Lahecka, admitted over objection, about the Phillips line explosion was harmless. We disagree. Lahecka testified in

**636**

some detail that the Phillips line was carrying heavier than air gases that "had spread out into the low places and had gone as much or more than one-half mile away from the source of the leak, going in all directions, just flowing out through the low places, and when it became ignited, it just burned the fence posts down, only charred stubs, steel bridge pipes, four inch, were melted and sagged down, trees burned down, utility wires burned down, six people killed, four or five automobiles melted." Appellant's objection that such evidence was immaterial and not related to any issue in the case was overruled. Later Mooney was asked what in his opinion caused the rupture in the Phillips line near Austin, and he answered he did not know. He was then asked, "What caused the people to get killed down there?", and he answered, "The line blew up." Neither question to Mooney was objected to.

■■ We are not overlooking the rule that the admission of evidence over objection is deemed to be harmless if the objecting party subsequently permits similar evidence to be introduced without objection. Medina Electric Cooperative, Inc. v. Ball, 368 S.W.2d 227 (Tex.Civ.App.—San Antonio, 1963, no writ); Lone Star Gas Co. v. Mitchell, 407 S.W.2d 543 (Tex.Civ.App.—Tyler, 1966, no writ). Here, however, Lahecka testified in detail to the damage done by the rupture and explosion of the Phillips line near Austin, while Mooney testified only that the Phillips line was a liquid line and blew up, but he did not know why. The court and jury did not get the same picture from Mooney's testimony as they did from Lahecka's; their testimony is not substantially the same. The only similarity is that there was a rupture and an explosion. We are of the opinion that there is not sufficient similarity to cause the error in admitting Lahecka's testimony about the Phillips explosion to be harmless.

Judgment of the trial court is reversed and the cause is remanded.