**DELHI GAS PIPELINE COMPANY,**
Appellant,

v.

**E. C. HEDDIN et ux., Appellees.**

No. 736.

Court of Civil Appeals of Texas, Tyler.

March 28, 1974.

Rehearing Denied April 25, 1974.

418

Jackson, Walker, Winstead, Cantwell & Miller, Jack Pew, Jr., Dallas, for appellant.

Wynne & Wynne, Wills Point, Elliott & Bass, Clyde Elliott, Jr., Canton, for appellees.

DUNAGAN, Chief Justice.

This is one of a number of appeals concerning the condemnation of a strip of land through Van Zandt County, Texas, for purposes of laying a gas transmission pipeline. Delhi Gas Pipeline Company, appellant-condemnor, brought this suit against E. C. Heddin and wife, Lillie Belle Heddin, appellees, to determine the amount of loss, if any, in market value of the Heddins' property suffered after a 1.5-acre easement from their land was taken to construct a gas pipeline. The Heddins own a 75-acre rectangular-shaped tract in Van Zandt County, Texas. The easement runs generally north to south with three-fourths of the property to the west side of the pipeline and the remaining one-fourth east of the line. The land actually condemned for purposes of the easement is 50 feet wide and 1,677 feet long, leaving a remainder of 73.5 acres. The property has no utilities, no improvements and is uninhabited; it has been used in the past for ranching.

The right-of-way easement houses a pipeline 12¾ inches in outside diameter, buried thirty-six inches under the ground. Admittedly, the gas transported contains approximately 3.2 percent hydrogen sulfide, a lethal poison. It is the dangerous nature of the contents of this line and the fear created by its presence on the land which generates the entire controversy of this appeal.

In answer to special issues, the jury found: (1) the per acre value of the property actually taken for the easement before the taking was $405.00; (2) the per acre value of the property actually taken for the easement after the taking was $48.00; (3) the per acre value of the remainder before the taking was $405.00; and (4) the per acre value of the remainder after the taking was $175.00. However, the lowest value of the remainder after the taking testified to by any witness was $200.00. Accordingly, appellees remitted $25.00 per average acre of the damage to the remainder, and the court, upon appellees' motion,

amended the answer to special issue number four to read $200.00 per average acre instead of $175.00. Upon this verdict— that the 1.5-acre tract taken for the easement was damaged $357.00 per acre and the 73.5-acre remainder was damaged $205.00 per acre, the trial court rendered judgment for appellees in the amount of $15,603.00, less deposits. Appellant contends the jury placed the market value of the land very low after the pipeline was installed as a result of improper influence on them arising out of error on the part of the trial court in allowing certain inflammatory and prejudicial evidence to be presented. We affirm the trial court.

This case involves the same appellant and the same pipeline as another case decided this same day styled Delhi Gas Pipeline Company v. Mangum et ux., Tex.Civ. App., 507 S.W.2d 631. Reference will frequently be made to the Mangum case for the applicable law and its explanation as previously determined by us.

■ Appellant's first point of error is directed at the appellees' witness, Robinson, a real estate appraiser. As in the Mangum case, the appellant made objection that Robinson's testimony was hearsay and as such, inadmissible. The objection was overruled and he was permitted to tell about a pipeline rupture which took place near Edgewood, Texas, approximately three miles from defendants' property. Robinson related how the Tommy Reid family, who live near the place of the rupture, smelled gas during the night and escaped from their home only to return after the line was repaired and find their pets dead. Two dogs and a cat were killed, along with ten head of cattle in the pasture. The Reid family also suffered considerable damage from tarnished metal fixtures in their home. In our decision in the Mangum case, this day delivered, we held the admission of this hearsay evidence to be reversible error. However, in the instant case another witness, Parkinson, appeared and testified as an eye witness. No objection was made that Parkinson was

testifying from hearsay and he gave approximately the same account of what happened as did Robinson.

Appellant's third point of error complains of testimony given by the appellees' witness, Lahecka, concerning the contents of certain Railroad Commission reports. Lahecka was put on the stand as an expert in transportation of petroleum products. His testimony covered a variety of related areas, concentrating primarily on the dangerous nature of natural gas transmission pipelines. When asked about the pipeline leaks Delhi had reported to the Railroad Commission, the following took place:

"MR. ELLIOTT: I asked him if he had been down to Austin and to the Utilities Commission.

"THE COURT: I would overrule the objection and ask you to answer.

"A. Yes, I have been in the Utility Division of the Railroad Commission in Austin.

"Q. Has the Delhi Gas Pipeline Company reported leaks on their line?

"MR. HARTMAN: That's the objection we make, Your Honor. It is rank hearsay and not the best evidence of what was done. It's just a case of testifying to what he may or may not have seen, and it is complete hearsay.

"Q. You are testifying to what you saw, aren't you, Mr. Lahecka?

"A. That is correct.

"THE COURT: Objection overruled.

"MR. HARTMAN: Note our exceptions.

"Q. Did you see reports of leaks by the Delhi Gas Pipeline Company to the Railroad Commission?

"A. Yes, I did.

"Q. And of course, you have compared the Pan American line to the Delhi Line. Are you aware of any leaks that occurred on the Pan American Line?

"A. The one that I am aware of is the one that occurred—I didn't look at the report on the Pan American Line, but the fact that I was on the ground and saw where the line had had a leak north of town here, did show me that in this area they did have a leak, and that occurred."

■ It appears to us that both objections of appellant were well taken. The best evidence rule is most frequently applied in the case of written instruments. In applying the rule with respect to proving the contents of a written instrument, it is uniformly held that the instrument itself is the best evidence of its contents. Accordingly, the contents of an instrument in writing may not ordinarily be proved by parol evidence or by a mere copy of the instrument. 23 Tex.Jur.2d sec. 217. Furthermore, the hearsay rule is just as applicable to statements in writing as it is to oral statements. 24 Tex.Jur.2d, Evidence, sec. 562. Oral testimony based on entries contained in books or reports, without producing the source of such information or showing a legally valid reason for their non-production, is hearsay. 24 Tex.Jur.2d p. 66, sec. 562; Howard v. State, 35 Tex. Cr.R. 136, 32 S.W. 544 (1895).

■ Even though error has been shown in the trial of the cause, it yet must be proven harmful before we can upset the trial court judgment. Lahecka had earlier testified, without objection, that this type of pipeline does rupture and explode as a matter of record. The objection to the admission of evidence is waived where similar evidence is admitted without objection. State of Texas v. Curtis, 409 S.W.2d 622 (Tex.Civ.App., Waco, 1966, n.w.h.); Lone Star Gas Company v. Mitchell, 407 S.W.2d

543 (Tex.Civ.App., Tyler, 1966 n.w.h.); Rowe v. Liles, 226 S.W.2d 253 (Tex.Civ. App., Waco, 1950, writ ref.).

■ Moreover, the rule is well established in this State that the trial court's admission of evidence over objection is deemed to be harmless if the objecting party permits similar evidence to be introduced without objection. Medina Electric Cooperative, Inc. v. Ball, 368 S.W.2d 227 (Tex.Civ.App., San Antonio, 1963, n.w.h.); Rowe v. Liles, supra; 23 Tex.Jur.2d, sec. 208, p. 320.

■ Question of whether error, if any, probably caused rendition of an improper judgment must be determined by the appellate court in the exercise of its sound discretion from the record as a whole, including the state of the evidence. Rule 434, Texas Rules Civil Procedure; Carter v. City of Tyler, 454 S.W.2d 771 (Tex.Civ.App., Tyler, 1970 writ ref., n.r.e.); Purvis v. Johnson, 430 S.W.2d 226 (Tex.Civ.App., San Antonio, 1968, n.w.h.). The burden of proving harmful error rests squarely on the shoulders of the appellant. City of Galveston v. Hill, 151 Tex. 139, 246 S.W.2d 860 (1952). Appellant has failed to demonstrate that such testimony was calculated to cause, and probably did cause the rendition of an improper judgment. Rule 434, T.R.C.P. Appellant's points one and three are overruled.

Finally, appellant alleges the trial court erred in permitting appellees' witness, Parkinson, to testify that a pipeline had ruptured on his property in Edgewood, Texas, killing livestock and causing damage to his daughter's house, over objection that such testimony had not been shown to be material to the market value of the property involved in the present case. Essentially the appellant is claiming that the requisite degree of similarity has not been shown between the two pipelines prior to the introduction of evidence about the ruptured line. When discussing this point in the Mangum case, we held:

"* * * We believe that evidence that two pipelines are generally similar in their important or essential characteristics so that they are alike in the main, or with regard to the overall picture, must be presented before evidence of a rupture or explosion of one of them may be offered in a condemnation case such as this."

■ Examination of the record reveals that appellees' witnesses, Lahecka, Robinson and Parkinson, gave testimony for purposes of showing the similarity between the two pipelines. A partial list of the factors considered on both lines included the use of x-ray welded joints, outside wrapping of the lines, the size of the lines, the type of product transported, the pressure of the lines, the type of pipe used, the use of rust inhibitors inside the pipe, the installation of cathodic bed protection, the use of lock valves, the use of monitoring systems and the location and distance between the point of the rupture on the Pan American line and the appellees' property. Appellant raised no objection to the qualifications of the witnesses to give such testimony. Although we recognize other important considerations could exist, the degree of similarity was such that we find no clear abuse of discretion on the part of the trial judge in admitting the evidence concerning the Pan American rupture. Each of appellant's points has been considered. In our opinion neither presents reversible error and accordingly they are overruled.

Finding no reversible error, the judgment of the trial court is affirmed.