**DELHI GAS PIPELINE COMPANY,**
Appellant,

v.

**C. D. DOUTHIT et ux., Appellees.**

No. 763.

Court of Civil Appeals of Texas, Tyler.

May 30, 1974.

Jackson, Walker, Winstead, Cantwell & Miller, Jack Pew, Jr., Dallas, for appellant.

Wynne & Wynne, Wills Point, Elliott & Bass, Canton, of counsel, Clyde Elliott, Jr., Canton, for appellees.

DUNAGAN, Chief Justice.

This is a condemnation case. It is but one of a number of appeals brought about by the condemnation of a strip of land through Van Zandt County, Texas, for the purpose of laying a gas transmission pipeline. Delhi Gas Pipeline Company, appellant-condemnor, brought this suit against C. D. Douthit and wife, Senora Douthit, appellees, to determine the amount of loss, if any, in market value of the Douthits' property, suffered after a 1.5-acre easement was taken from their land to construct a gas transmission pipeline. The Douthits own a rectangular shaped 50-acre tract of land in Van Zandt County, Texas. The easement runs generally north to south through the eastern edge of the property. The land actually condemned for purposes of the easement is 50 feet wide and 1,299 feet long, leaving a remainder of 48.5 acres.

The right-of-way easement houses a pipeline 12¾ inches in outside diameter, buried thirty-six inches under the ground. Admittedly, the gas transported contains approximately 3.2 percent hydrogen sulfide, a lethal poison. It is the dangerous nature of the contents of this line and the alleged fear created by its presence on the land which generate the entire controversy of this appeal.

In answer to special issues, the jury found: (1) the per acre value of the property actually taken for the easement before the taking was $800.00; (2) the per acre value of the property actually taken for the easement after the taking was $75.00; (3) the per acre value of the remainder before the taking was $800.00; and (4) the per acre value of the remainder after the taking was $400.00. However, the lowest value of the remainder after the taking testified to by any witness was $425.00. Accordingly, appellees remitted $25.00 per average acre of the damage to the remainder, and the court, upon appellees' motion, amended the answer to special issue number four to read $425.00 per

average acre instead of $400.00. Upon this verdict—that the 1.5 acre tract taken for the easement was damaged $725.00 per acre and the 48.5 acre remainder was damaged $375.00 per acre, the trial court rendered judgment for the appellees in the amount of $19,275.00, less deposits. Appellant contends the jury placed the market value of the land very low after the pipeline was installed as a result of improper influence on the jury arising out of error on the part of the trial court in allowing certain inflammatory and prejudicial evidence to be presented. We reverse the trial court and remand the cause for a new trial.

We have previously decided three cases involving this same pipeline through property located in the same general area of the property in question. Due to basic differences which have arisen in the trial of these causes, the legal theories we have deemed applicable have differed and the outcomes have not been consistent. However, we feel the case presently before the court for consideration is governed by the case of Delhi v. Mangum, 507 S.W.2d 631 (Tex.Civ.App., Tyler, 1974, n.w.h.). Reference will be made to the Mangum case for the applicable law and its explanation as previously determined by us.

Appellant presents only two points of error on appeal. The first point alleges the trial court prejudicially erred in allowing appellees' witness Robinson to give hearsay testimony concerning the fact and effects of a rupture of a Pan American pipeline. The second point asserts the trial court prejudicially erred in allowing appellees' witnesses Robinson and Lahecka to give hearsay testimony in an effort to establish that the Pan American pipeline which ruptured was substantially similar to the Delhi pipeline involved in this case.

As concerns the first point of error, Robinson, a real estate expert, appeared and testified about a Pan American pipeline rupture just south of Edgewood, Texas, which he investigated a few days fol-

lowing the incident. Before Robinson testified about the Edgewood pipeline rupture, the trial court allowed the appellant to conduct a voir dire examination of him, in which the following took place:

"Q. What I am going to ask you, and we have been through this many times before, (is) sic this is a matter that happened before you got there, isn't it?

"A. Yes.

"Q. And you yourself didn't personally see anything take place, did you?

"A. I didn't see the gas escaping, no. It had already been repaired when I got there.

"Q. You didn't even know that it escaped, except that somebody told you, is that correct?

"A. What I was told, and read, and I saw the results of it on a house right across the street.

"Q. But what you are about to tell us is that something which happened as you understand it before you got there, happened somewhere close to Edgewood, that you went over after it took place and you talked to some people who claimed to know something about it, and you read somethings about it, and you saw some things, is that right?

"A. I think if I remember right, I think Oscar Phillips was the first one that told me about that. He lived right north of town.

"Q. All I am trying to ask you—

"A. And then I read it in the paper the same day.

"Q. All I am trying—

"A. Then I went over and check on it.

"Q. All right.

"A. Then early the next morning I got George Reeves and my camera and we got pictures.

"MR. HARTMAN: That's what I wanted to establish by the witness. We will object to any so-called knowledge of the witness on the grounds that it is certainly hearsay as to him. He has no personal knowledge. He has read about it, whatever it may be. He has talked to people about it, whatever they may have told him. Those are the people that should be testifying if there is any such person under any circumstances. And of course the worst objection and the most serious is that it involves the Pan American line and has nothing whatsoever to do with the Delhi Pipeline Company. We have no control over that pipeline and know nothing about it."

The objection was overruled and Robinson was permitted to testify about the damage caused by the rupture of this pipeline. He related how the Tommy Reid family, who live near the place of the rupture, smelled gas during the night and hurriedly escaped from their home to the home of his father-in-law. Upon returning, after the line was repaired, they found their pets dead. Two dogs and a cat were killed, along with ten head of cattle in the pasture. The Reid family also suffered considerable damage to their home.

We have consistently held the testimony of Robinson concerning the Pan American pipeline rupture to be inadmissible hearsay. Delhi v. Mangum, supra; Delhi v. Heddin, opinion delivered March 28, 1974, 508 S. W.2d 417 (Tex.Civ.App., 1974, n.w.h.). Reference is made to the case of Delhi v. Mangum, supra, for a more complete discussion of this point.

In the case of Delhi v. Heddin, supra, we held the hearsay testimony of Robinson did not constitute reversible error due to the fact that Parkinson, an eye witness, testified to essentially the same facts, without objection. In the case before the court, Robinson was the only witness to relate the details of the Pan American pipeline rupture.

Due to the impressive character of Robinson's hearsay testimony and the apparent

effect it had upon the jury's market value determination, we feel the record as a whole indicates it was calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure.

Accordingly, the judgment of the trial court is reversed and the cause is remanded.