**DELHI GAS PIPELINE COMPANY,**
Appellant,

v.

**Lowell NEWMAN et al., Appellees.**

No. 775.

Court of Civil Appeals of Texas,
Tyler.

Aug. 1, 1974.

Jackson, Walker, Winstead, Cantwell & Miller, Jack Pew, Jr., Dallas, for appellant.

Elliott & Bass, Canton, Wynne & Wynne, Wills Point, for appellees; Clyde Elliott, Jr., Canton, of counsel.

McKAY, Justice.

This is a condemnation suit. Appellant Delhi Gas Pipeline Company has condemned a gas pipeline easement across a fifty-eight acre tract owned by appellees in Van Zandt County. The easement consists of approximately two acres of land and is 50 feet wide and 1816 feet long. The land is located on Highway 19 approximately five miles south of Canton, and at the time of taking was being used for pasture. It was uninhabited.

In answer to special issues the jury found (1) the fair market value of the two-acre easement was $800.00 per acre before the taking and (2) $80.00 per acre after the taking; that (3) the fair market value of the 56-acre remainder was $800.00 per acre before the taking, and (4) $450.00 after the taking. Judgment was rendered by the trial court for appellees for $21,040.00 less deductions for deposits.

Appellant presents seven points of error complaining that the witnesses Robinson and Lahecka gave hearsay testimony about the fact and effects of a rupture of a Pan American pipeline in another part of the county and about the similarity of the Pan American and Delhi pipelines. Complaint is also made of the testimony of Lahecka that in his opinion it was unsafe to live within one-half mile from a pipeline. We sustain these points and reverse and remand the case.

Witness Robinson was a real estate man who testified about values as well as about a rupture on a Pan American pipeline in another part of Van Zandt County. Over appellant's objection that it was hearsay, Robinson was permitted to testify that the Pan American pipeline ruptured at a point across the road from one Tommy Reed's new house, and that the Reed family smelled something during the night and they got up and went to Mrs. Reed's parents' house. He then testified that

"And Tommy told me and showed me the damage it had done to the house. It had damaged the paint on the outside and the inside of the house. And the silverware, lamp stands, things of that nature were tarnished. And he told me that he had two dogs that he left that night when he left—he was in a hurry

when he left—and he left his dogs and cat there, and when he came back the next morning both his dogs and cat were dead. And in the pasture right across in front of his house where this leak was, and where Mr. Parkinson had his cattle, there were ten head of cattle dead and he had a picture of nine of them and I saw those pictures of those nine head of cattle * * *."

Robinson had previously testified that he had read the newspaper and heard what happened concerning the Pan American line rupture before he talked to Tommy Reed and that he did not go see for himself until two days after the rupture. He was not present and did not see the rupture.

■ The testimony concerning the rupture on the Pan American line is very similar to that given by Robinson in Delhi Gas Pipeline Co. v. Mangum, 507 S.W.2d 631 (Tex.Civ.App.—Tyler, 1974, no writ); Delhi Gas Pipeline v. Douthit, 511 S.W.2d 80 (Tex.Civ.App.—Tyler, 1974, no writ); Delhi Gas Pipeline Co. v. Heddin, 508 S. W.2d 417 (Tex.Civ.App.—Tyler, 1974, no writ) all by this court. We believe this case is controlled by our decision in the Mangum case. As this court said in *Mangum*, Robinson's testimony dealt with details and results and damage done by a rupture of another pipeline based primarily upon what others had told him and what he read in the newspapers. We believe in this case, as in *Mangum*, that due to the nature of this hearsay testimony, such evidence probably did influence the jury and resulted in the rendition of an improper judgment and was therefore harmful error. Rule 434, Texas Rules of Civil Procedure.

■ Complaint is also made that Robinson's testimony concerning the characteristics of the Pan American pipeline and what product it carried was hearsay. We agree that such testimony was hearsay inasmuch as Robinson testified he read about the pipeline in depositions and in the Farm Journal and the Wall Street Journal and

the Oil and Gas Journal and he talked to a number of employees. We think this testimony was not admissible and the court erred in admitting it.

■ Appellant complains that the testimony of the witness Lahecka concerning the characteristics of the Delhi line and the Pan American line was hearsay and was erroneously admitted. Lahecka testified that a majority (and later ninety-nine per cent) of what he knew about the two pipelines was learned by reading from qualified witnesses and engineers and professionals, and that he did not see the construction of either line. Appellant's hearsay objection was overruled and Lahecka was permitted to testify that the Delhi line was 12¾ inches in outside diameter with ½ inch wall thickness; that it carries gas from the Smackover formation which contains hydrogen sulfide, a poisonous gas; that it is designed to carry 1135 to 1180 pounds per square inch; that grade one pipe was used which is for less populated areas while grade four is for heavily populated areas; that the joints of pipes were welded together and that the welds were x-rayed; that the line was laid thirty-six inches below the surface; that the pipe was wrapped outside and a rust inhibitor applied on the inside; that there were four valves on the seventy-mile line; and that there was no monitoring system that he could see or had read about. Lahecka also testified that the Pan American line was three feet deep and that "These two lines were built according to Federal regulations, and should be similar as far as construction in every phase that we have mentioned."

We are of the opinion that Lahecka's testimony was hearsay and that the trial court erred in admitting it. Apparently appellees were attempting to show the similarity of the two pipelines so that evidence of the rupture on the Pan American line could be shown. We held in the *Mangum* case:

"We believe that evidence that two pipelines are generally similar in their im-

portant or essential characteristics so that they are alike in the main, or with regard to the overall picture, must be presented before evidence of a rupture or explosion of one of them may be offered in a condemnation case such as this."

However, such similarity may not be shown by hearsay evidence as was done here. There was no admissible evidence of probative force to show similarity of the two pipelines and, therefore, such evidence concerning a rupture or explosion on the Pan American line was not admissible and constituted reversible error.

It is our opinion that Lahecka's testimony, admitted over objection, that it would be dangerous to live within one-half mile of a gas pipeline like the one involved here was prejudicial and constituted error. Griggs Furniture Co. v. Bufkin, 348 S.W. 2d 867 (Tex.Civ.App.—Amarillo, 1961, writ ref'd, n. r. e.).

The judgment of the trial court is reversed and the cause is remanded to that court.