UVALDE COUNTY,
Appellant/Cross Appellee,

v.

Jerry D. BARRIER,
Appellee/Cross Appellant.

No. 04–85–00179–CV.

Court of Appeals of Texas,
San Antonio.

May 7, 1986.

Eugene B. Wilshire, Jr., Jacalyn D. Scott, Bonham, Carrington & Fox, Houston, for appellant/cross appellee.

Mark J. Cannan, San Antonio, for appellee/cross appellant.

Before CADENA, C.J., and BUTTS and DIAL, JJ.

## OPINION

BUTTS, Justice.

This is an appeal from a judgment following a declaratory judgment action. The trial court granted Jerry Barrier, the plaintiff, damages of $19,360.00 against the defendant, Uvalde County. The trial court upheld use of an easement as a public road. Both parties appeal.

Barrier brought suit after Uvalde County employees went upon his property (the Ranch), cut a new road along the western boundary, where the Nueces River runs, and constructed a new low water crossing. He alleged he suffered $50,000.00 damages resulting from the County's trespass, and he continued to suffer damages from trespass by the general public. He sued for (1) declaratory judgment that the western boundary of his property is the gradient boundary of the Nueces River; (2) injunctive relief to prevent trespass; and (3) actual damages arising from trespass.

The trial court made the following pertinent findings of facts and conclusions of law:

## FINDINGS OF FACT

4. A roadway traverses the ranch in an east/west direction at the northern boundary of the ranch and terminates at the east bank of the Nueces River where it connects with a low water crossing known as the Tom Nunn Crossing (hereinafter "the roadway").

5. The Tom Nunn Crossing is a low water crossing of the Nueces River which connects the roadway in question.

6. The Tom Nunn Crossing has been located up to and within 400 yards from a line that would be a direct extension of the roadway by means of an extension of that roadway along the east bank and bed of the Nueces River to the point at which the crossing is made.

7. The roadway and crossing were established prior to 1917 and have generally been used by the public for access to the west side of the Nueces River since that time. That use by the public has included use of the connecting roadway along the east bank and bed of the Nueces River.

8. The roadway, crossing and connection thereof have never been fenced or closed to the public and permission has never been required to use the roadway, crossing and connection thereof by members of the general public.

9. The roadway, crossing and connection thereof have been established and/or maintained by the County through the use of County employees, equipment and funds since at least 1934.

10. At the present time, the roadway, crossing and connection thereof provide the only access for members of the public to the area on the west side of the Nueces River at that point, such members of the public including at least sev-

en families who have no other access to their property.

11. In May of 1982 the Defendant removed 3,872 cubic yards of material from the Plaintiff's property for use in reestablishing the washed out portions of the Tom Nunn Crossing and the access thereto.

12. The market value of the material removed was $19,360.00.

## CONCLUSIONS OF LAW

1. For the following reasons, the roadway and connection to the Tom Nunn Crossing by way of an extension to the roadway along the east bank of the Nueces River for a distance of at least 400 yards from a direct extension of the east/west roadway are impliedly dedicated to public use:

A. For a period of at least 60 years the owners and occupiers of the land in question have thrown open the roadway and access to the crossing to public use.

B. For a period of at least 60 years the roadway and access to the crossing within 400 yards of the road have been used by the public without interruption and not by mere permission.

C. The road and access to the crossing within 400 yards of the road have the reputation of being public.

D. The road and access to the crossing within 400 yards of the road have been maintained by the County with the consent and acquiescence of the landowners in question for a period of more than 40 years.

E. Members of the public will be injured if the roadway and access to the crossing are closed.

F. The use of the roadway and access to the crossing have not been limited to a particular class of persons.

G. The appropriation of the roadway and access to the crossing have been accepted by the public use thereof.

2. The Plaintiff is entitled to recover $19,360.00, the market value of the dirt removed from [Plaintiff's] property by the County to reconstruct the Tom Nunn Crossing and the access thereto.

■ Uvalde County brings four points of error complaining there is no evidence, or insufficient evidence, to support the award of damages. However, the County fails to challenge specific findings of fact relating to those damages. Barrier asserts such failure constitutes waiver of any error concerning damages. *See Ervin v. Ervin*, 624 S.W.2d 264, 266 (Tex.Civ.App.—Eastland 1981, writ dism'd); *Texas State Board of Pharmacy v. Gibson's Discount Center, Inc.*, 541 S.W.2d 884, 886 (Tex.Civ.App.—Austin 1976, writ ref'd n.r.e.); *Whitten v. Alling & Cory Co.*, 526 S.W.2d 245, 248 (Tex.Civ.App.—Tyler 1975, writ ref'd).

Uvalde County addresses its argument to the measure of damages employed and want of proof of damages. The findings of fact are devoid of mention of measure of damages and do not preclude an appellate review of the method employed. Moreover, findings of fact, although unchallenged, are not conclusive on appeal when, as in this case, a statement of facts appears in the record. *Swanson v. Swanson*, 148 Tex. 600, 228 S.W.2d 156, 157 (1950); *Block v. Waters*, 564 S.W.2d 113, 115 (Tex. Civ.App.—Beaumont 1978, no writ); *Hanover Insurance Co. v. Sonfield*, 386 S.W.2d 160, 164 (Tex.Civ.App.—Houston 1965, no writ).

In the first and second points of error, Uvalde County complains there was no evidence, or insufficient evidence, related to the proper measure of damages which the County says is the difference in value of the property before and after the incident; and further that it was error to award damages for restoration where evidence of restoration was based solely on hearsay.

■ The type of compensation to be awarded for an injury to real property depends upon the nature of the injury—permanent or temporary. *Kraft v. Langford*, 565 S.W.2d 223, 227 (Tex.1978). The measure of damages in a suit for permanent damage to land is the difference in market value of the land immediately before and

immediately after trespass. *Porras v. Craig,* 675 S.W.2d 503, 504 (Tex.1984). Where the injury to realty is repairable or temporary, the proper measure of damages is the reasonable cost of repairs necessary to restore the property to its prior condition. *Bayouth v. Lion Oil Co.,* 671 S.W.2d 867, 868 (Tex.1984); *Kraft v. Langford, supra; Moren v. Pruske,* 570 S.W.2d 442, 444 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.).

■ While the court did not expressly characterize the injury in question, conclusion of law two implies it was temporary in nature.[1] Holding the proper measure of damages to be the reasonable cost of repairs necessary to restore the property to its prior condition, we overrule point of error one. We now inquire whether there is sufficient evidence to sustain the award of restoration damages.[2]

The trial judge, as finder of fact, determined the controlling facts. In doing so, he had a right to accept or reject all or any part of the witnesses' testimony. *Hood v. Texas Indemnity Insurance Co.,* 146 Tex. 522, 209 S.W.2d 345, 346 (1948); *Wright v. Wright,* 699 S.W.2d 620, 621 (Tex.App.—San Antonio 1985, no writ). Unless the record shows to the contrary, every reasonable presumption must be indulged in favor of the findings and judgment of the trial court. *Hursey v. Thompson,* 141 Tex. 519, 174 S.W.2d 317, 319 (1943); *Wright v. Wright, supra.*

■ Barrier testified concerning the value of the dirt removed from his property. Over the County's hearsay objection, he stated that a homebuilder in Houston "who happens to move in dirt and do excavation and move in land fill ... said ... that five dollars a yard was a reasonable price." No other evidence regarding the reasonable cost of restoration was admitted. Barrier argues this testimony is sufficient to sus-

tain the award of damages, relying on *Porras v. Craig, supra* at 504.

The evidence is hearsay, to which the County objected. TEX.R.EVID. 802; *Delhi Gas Pipeline Co. v. Newman,* 512 S.W.2d 741, 743–44 (Tex.Civ.App.—Tyler 1974, no writ); *Orr Chevrolet, Inc. v. Courtney,* 488 S.W.2d 883, 886 (Tex.Civ. App.—Texarkana 1972, no writ); *Stafford v. Powell,* 148 S.W.2d 965, 967 (Tex.Civ. App.—Eastland 1941, no writ); *Rathbun v. Miller,* 266 S.W. 818, 821 (Tex.Civ.App.—El Paso 1924, no writ).

Barrier erroneously relies on *Porras v. Craig, supra.* While the Court in *Porras* held that a property owner may qualify as a witness as to damages to his property, the damages involved in that case were *permanent* in nature, requiring testimony as to market value. As already noted, the instant case involves temporary injury to property, and requires evidence as to reasonable cost of restoration. Although a property owner may testify to the market value of his property, he is not recognized as an expert qualified to testify as to cost of restoration, absent the proper predicate. There was no such predicate laid in the instant case. Further, the objected-to testimony was inadmissible hearsay. We therefore, hold there was no admissible evidence of probative force showing reasonable cost of restoration. Accordingly, we sustain the second point.

Finding no evidence to support the award of damages, we need not reach the County's final points of error which also address the damages question.

### Barrier's Appeal

In his first point of error, Barrier contends the trial court erred in failing to declare that the western boundary of the Ranch is the gradient boundary of the

---

1. Conclusion of Law no. 2. The Plaintiff is entitled to recover $19,360.00, the market value of the dirt removed from [Plaintiff's] property by the County....

2. We note it is proper to also award damages for the loss of use and enjoyment of the proper-

ty during the time the repairs are being made. *See Lone Star Development Corp. v. Reilly,* 656 S.W.2d 521, 525–26 (Tex.App.—Dallas 1983, writ ref'd n.r.e.). However, Barrier did not plead for such damages nor was this issue raised on appeal.

Nueces River. Uniform Declaratory Judgments Act, TEX.REV.CIV.STAT.ANN. art. 2524–1 (Vernon 1965).[3]

██ While the availability of another remedy does not deprive the court of jurisdiction to grant declaratory relief, *Texas Liquor Control Board v. Canyon Creek Land Corp.*, 456 S.W.2d 891 (Tex.1970), the court has sole discretion to determine whether to grant such relief. *Bexar-Medina-Atascosa Counties Water Control & Improvement District No. 1 v. Medina Lake Protection Association*, 640 S.W.2d 778, 780 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.); *Crawford v. City of Houston*, 600 S.W.2d 891, 894 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). We find the trial court did not abuse its discretion in not declaring the boundary of the Ranch and in denying statutory attorney's fees. We overrule Barrier's first point of error.

██ In point of error three Barrier complains of trial court error in failing to award damages against the County for its destruction of Barrier's trees. Barrier alleges that the trespass was willful, intentional and not in good faith and he is, therefore, entitled to damages for the 37 trees that were destroyed, resulting in $75,000 damages.

The following constitutes the only evidence by Barrier substantiating his damages:

[Plaintiff's attorney]: Mr. Barrier, have you had occasion to investigate your property and determine how many trees have been cut or irreparably damages subsequent to the construction ... in May of 1982?

\* \* \* \* \* \*

A: Yes, I have.

\* \* \* \* \* \*

Q: And what did you determine?
A: There was thirty-seven trees damaged. I've got the exact number in here. There was thirty-six natural pecans and one live oak.

\* \* \* \* \* \*

Q: And neither you nor anyone acting at your direction cut, destroyed or mutilated those trees in any way?
A: No, sir.
Q: Do you know the value or do you know the replacement value of those trees?

\* \* \* \* \* \*

A: Seventy-five thousand dollars.

On cross-examination, Barrier testified that the $75,000 figure was derived from estimates received from a nursery and construction company. However, the estimates were not admitted into evidence. The County moved to strike the testimony; the court overruled the motion stating the testimony would go to the weight of the evidence. Further cross-examination revealed the following:

Q: When did you make your count of trees that were damaged in some respect?
A: I think that was either this past December or early January.

\* \* \* \* \* \*

Q: Did you make a count of the trees or an inventory of the trees in March of 1981 when you purchased the property?
A: No, but I was down there. If you are asking me if I counted anything, no, I didn't.

\* \* \* \* \* \*

Q: Some of them could have been sawed down in March of '81, couldn't they?
A: I guess they could have. You know, I guess they could have ... I know that the trees were sawed down because we caught people sawing them down....

\* \* \* \* \* \*

**3.** Article 2524–1, *supra,* has been recodified in TEX.CIV.PRAC. & REM.CODE, chapter 37 (Vernon 1986).

Q: The people that you caught weren't employees of the County, were they?

A: I don't know whether they were or not.

Q: But you can't say that they were?

A: No, and I can't say that they were not.

The record does not reveal error in the trial court's refusal to grant damages for the replacement value of Barrier's trees. Barrier failed to establish that the County was responsible for the damages and failed, over objection, to present competent evidence as to the replacement value. Barrier's third point of error is overruled.

■ In point of error four Barrier requests the trial court's findings and conclusions [that the private road easement and the extension up to 400 yards along the Nueces River are impliedly dedicated to public use] be stricken as they contradict the court's judgment denying all such relief. Barrier alleges the recitation in the judgment "All other relief sought and not herein expressly granted is denied" reflects the court's refusal to find for the County on the theory of implied dedication. This point is without merit.

The County sought no affirmative relief; rather, they asserted the affirmative defense of implied dedication. Only Barrier requested relief. Therefore, the findings of fact and conclusions of law do not contradict the court's judgment.

In points of error five through fourteen, Barrier alleges there is no evidence, or insufficient evidence, to support the trial court's findings of fact and conclusions of law. In point of error two he complains of the refusal to grant a permanent injunction against the County enjoining it from entering the Ranch and interferring with Barrier's right to exclude the general public.

■ The elements of implied dedication are: (1) the acts of the landowner induced the belief that the landowner intended to dedicate the road to public use; (2) he was competent to do so; (3) the public relied on these acts and will be served by the dedication; and (4) there was an offer and acceptance of the dedication. *Lindner v. Hill,* 691 S.W.2d 590, 592 (Tex.1985); *Las Vegas Pecan & Cattle Co. v. Zavala County,* 682 S.W.2d 254, 256 (Tex.1984).

■ The County called six witnesses; there was testimony that the road in question had been used by the public generally since at least 1930. One witness said this was a public road since at least 1917; another since 1919. Three of the witnesses testified to such use dating back to 1930. It is located about two miles downstream from the U.S. 90 Highway bridge and existed before U.S. 90 was completed. They further testified that the County has maintained the road since the 1930's. Each witness testified to personally using the road for various reasons, including access to town, the White's mines, dancehalls, and for general recreational purposes. Moreover, to their knowledge no one had ever asked permission to use the road. They all agreed it was a public road. Seven landowners use the road to reach their land; six of these have no other means of access. At one time this was the road from Uvalde to Cline and to Del Rio. Such evidence is sufficient to support the findings and conclusions of implied dedication. *Las Vegas Pecan & Cattle Co. v. Zavala County, supra,* at 256–57.

There is also support in the record for the court's finding and conclusion that the "Tom Nunn Crossing has been located up to and within 400 yards from a line that would be a direct extension of the roadway" and that said extension is "impliedly dedicated to public use." While the testimony on this issue varied a great deal as to the distance of the extension, there was evidence that it had been up to a "quarter of a mile" after the rain washed out the existing extension; another witness testified the extension had been moved as much as three hundred yards after heavy rains in 1978.

The trial judge, as sole finder of fact, could accept or reject all or any part of the witnesses' testimony and every reasonable presumption must be indulged in favor of

the findings and judgment of the trial court. *Wright v. Wright, supra.* Applying this standard, we find sufficient evidence to support the court's judgment concerning the implied dedication of the 400 yard extension.

Barrier contends that a 1963 deed reservation, which reserved the road in question as a "private easement," disposes of this issue of implied dedication. However, the record reflects that an implied dedication of the road had occurred at least thirty years prior to the 1963 reservation by deed. A road remains dedicated to the public unless it is abandoned, *Lindner v. Hill, supra* at 592. Accordingly, we overrule this argument.

Finding sufficient evidence to support the findings of fact and conclusions of law that the road in question and an extension up to 400 yards are impliedly dedicated to public use, we find no error in the trial court's refusal to grant a permanent injunction against the County. Points of error two and five through fourteen are overruled.

In point of error fifteen Barrier alleges that any implied dedication violates TEX.REV.CIV.STAT.ANN. art. 6812h (Vernon Supp.1986). Article 6812h, § 2(a), effective August 31, 1981, provides that in any county where the population is less than 50,000 ... that "county may not establish, acquire or receive any public interest in a road except under ... *express* dedication."

The record shows the county acquired an implied dedication of the road in question prior to the effective date of the statute. As the statute is given prospective application only, it does not operate to divest the County of the easement. *Las Vegas Pecan & Cattle Co. v. Zavala County, supra* at 256; *Lindner v. Hill, supra* at 592.

We also reject Barrier's argument under his final point of error: that the trial court's finding of implied dedication of the easement to a low water crossing within 400 yards constitutes an undefined wandering easement and is unenforceable. We find the description of the land which is impliedly dedicated to be sufficient and overrule the point.

The judgment is affirmed in all things except the amount of damages. We reverse and remand only that portion of the case for determination of damages for the reasonable cost of repairs to restore the property. Costs of appeal are assessed ¾'s to Barrier and ¼ to County.