ZAC SMITH & COMPANY,
INC., Petitioner,

v.

OTIS ELEVATOR COMPANY,
Respondent.

No. C–5875.

Supreme Court of Texas.

July 8, 1987.

Rehearing Denied Sept. 16, 1987.

Larry F. York and J. Scott Howard, Baker & Botts, Austin, for petitioner.

Tom Broussard and Lloyd Broussard, Broussard and Broussard, Austin, for respondent.

MAUZY, Justice.

Otis Elevator Company, a New Jersey corporation, filed suit in Texas against Advanced Concrete of Texas, a Texas corporation, and Zac Smith & Company, Inc. (Smith), of Florida, for breach of contract in the sale of four elevators to be installed in a hotel in Austin, Texas. Smith filed a special appearance pursuant to TEX.R. CIV.P. 120a (Vernon's Supp.1987) and asserted lack of *in personam* jurisdiction. The trial court sustained Smith's objection to jurisdiction and ordered Smith dismissed from the lawsuit. Otis Elevator appealed the dismissal of Smith from the lawsuit; the court of appeals reversed on the ground that Smith failed to meet its burden of negating all bases of personal jurisdiction. 715 S.W.2d 806. Smith asserts that it has consummated no transaction in Texas; thus, the assumption of jurisdiction in Texas offends "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). We affirm the court of appeals' judgment and hold Zac Smith & Company, Inc., has sufficient contacts with Texas to reasonably require this Florida corporation to be subject to our long-arm statute. TEX.CIV.PRAC.REM.CODE § 17.042 (Vernon's 1986).

As the court of appeals noted, the requirement that Smith have sufficient contacts with the forum such that the exercise of jurisdiction by Texas courts does not offend "traditional notions of fair play and substantial justice" invokes federal due process guarantees. *International Shoe Co. v. Washington*, 326 U.S. at 316, 66 S.Ct. at 158. The federal due process clause

> protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 2181–2182, 85 L.Ed.2d 528 (1985). Thus, individuals must have "fair warning" that a "particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King Corp.*, 105 S.Ct. at 2183; *Shaffer v. Heitner*, 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (Stevens, J., concurring in judgment). Continuing and systematic contacts may give rise to the exercise of jurisdiction in a suit not arising out of or related to the defendant's contacts with the forum. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, n. 9, 104 S.Ct. 1868, 1872, n. 9, 80 L.Ed.2d 404 (1984); *Burger King Corp.*, 105 S.Ct. at 2182. Where contacts with the foreign sovereign are not continuing and systematic, but rather specific jurisdiction is alleged, the "fair warning" requirement is two-fold. First, the defendant's activities must have been "purposefully directed" to the forum, and second, the litigation must result from alleged injuries that "arise out of or relate to those activities." *Burger King Corp.*, 105 S.Ct. at 2182.

The Texas long-arm statute provides that a nonresident does business in this State and thereby is subject to this State's jurisdiction if the nonresident "contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state." TEX. CIV.PRAC.REM.CODE § 17.042(1). Prior to the U.S. Supreme Court's decisions in *Burger King* and *Helicopteros*, this court

enunciated a three-pronged test to be applied when determining the constitutional reach of this state's jurisdiction over persons with only a single or few contacts with Texas. *U–Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760 (Tex.1977), *cert. denied,* 434 U.S. 1063, 98 S.Ct. 1235, 55 L.Ed.2d 763 (1978); *O'Brien v. Lanpar Co.,* 399 S.W.2d 340 (Tex.1966). In order to exercise jurisdiction, it must be found that:

> (1) the nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;
>
> (2) the cause of action must arise from, or be connected with, such act or transaction; and
>
> (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

*O'Brien v. Lanpar Co.,* 399 S.W.2d at 342.

■ The first prong, when established, satisfies the "purposeful availment" test required by the Due Process Clause. If a foreign defendant purposefully does some act or consummates some transaction in Texas, then that defendant purposefully has availed itself of the benefits and protections of the laws of Texas. The second prong, when shown and when coupled with the first prong of the *O'Brien* test, meets the requirements for specific personal jurisdiction to attach under *Burger King* and *Helicopteros;* i.e., the defendant purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities. *Burger King Corp.,* 105 S.Ct. at 2182. Under the third prong of the *O'Brien* test, in evaluating the "quality, nature, and extent" of the contacts in instances wherein the defendant's activities with the forum are *not* continuing, it must be established that the defendant's contacts with the forum "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King Corp.,* 105 S.Ct. at 2184 (emphasis original); *McGee v. International Life Insurance Co.,* 355 U.S. 220 at 223, 78 S.Ct. 199 at 201, 2 L.Ed.2d 223 (1957). Thus, courts must find the activities of the defendant to be deliberate and significant. *Burger King Corp.,* 105 S.Ct. at 2184. Once it is determined that the defendant purposefully availed itself of the benefits and protections of the laws of the forum, the burden is on the defendant to show "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.,* 105 S.Ct. at 2185. Thus, it is incumbent upon the nonresident defendant to negate all bases of personal jurisdiction. *Siskind v. Villa Foundation for Education, Inc.,* 642 S.W.2d 434, 438 (Tex.1982). In that regard, *Burger King* instructs:

> Most such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional. For example, the potential clash of the forum's law with the "fundamental substantive social policies" of another State may be accommodated through application of the forum's choice-of-law rules. Similarly, a defendant claiming substantial inconvenience may seek a change of venue. Nevertheless, minimum requirements inherent in the concept of "fair play and substantial justice" may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities. (Citations omitted). As we previously have noted, jurisdictional rules may not be employed in such a way as to make litigation "so gravely difficult and inconvenient" that a party unfairly is at a "severe disadvantage" in comparison to his opponent. (Citation omitted).

*Burger King Corp.,* 105 S.Ct. at 2185.

In August 1983, Smith, a Florida bonding agent, and Advanced Concrete, a general contractor and manufacturer of prefabricated building materials, were joined as a joint venture for the sole purpose of constructing a hotel in the Panhandle of Flor-

ida. In mid-August of 1983, Smith and Advanced Concrete, as a joint venture, were notified by Waldorff Insurance & Bonding Company of Fort Walton Beach, Florida, of Lumberman's Mutual Casualty Company's intent to bond an 18–story hotel in Texas as long as certain conditions were met, including that the bond be issued to the joint venture. In September 1983, Double W Investors, the owner of a tract of land in Austin, entered into a contract with Advanced Concrete for construction of an 18–story Ramada Inn on its property. On October 25, 1983, Herbert Watkins, president of Advanced Concrete, executed a contract with Otis Elevator for the manufacture, sale, delivery and installation of four elevators for the Austin hotel. Six days later, Advanced Concrete and Smith executed a joint venture agreement for the purpose of constructing the Austin hotel. The agreement provided, among other matters, that both parties were responsible for the project's superintendent and control; that Smith was to provide an on-site manager with full authority to act on behalf of Smith; and that Smith would furnish the joint venture bond and the project's working capital.

In February 1984, Double W Investors executed a new contract for construction of the hotel on its property, this time with Advanced Concrete and Smith, a joint venture, and Austin Hotel Association, Ltd. On March 28, 1984, the City of Austin issued a building permit; however, the parties dispute to whom the permit was issued. The permit recites in typewritten form that it was issued to Austin Hotel Association, Ltd., and Advanced Concrete of Texas. Following "Advanced Concrete of Texas" is the handwritten notation "and Zac Smith Co., a Joint Venture." The director of the city's building inspection department certified that the permit was issued to "Advanced Concrete of Texas and Zac Smith, JTV." Lumberman's Mutual, as surety, issued a bonding and escrow agreement to the joint venture on April 12, 1984, in the amount of $9,856,000 for construction of the hotel; however, the performance bond was not executed. The construction of the hotel was never realized.

Meanwhile, with a delivery date of July 2, 1984, Otis Elevator proceeded with the manufacture of the four elevators under contract, and delivered the elevators to the Texas construction site, which was vacant except for a trailer.

■ We believe there is substantial evidence in the record supporting the court of appeals' conclusion that the exercise of jurisdiction over Smith in Texas for the alleged breach of the elevator contract does not offend due process. We recognize that a contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Burger King Corp.*, 105 S.Ct. at 2185; *citing Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316, 63 S.Ct. 602, 604, 87 L.Ed. 777 (1943). In a case such as the one before us, where the foreign defendant has had a single or few contacts with the forum by virtue of a contract,

> [i]t is those two factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

*Burger King Corp.*, 105 S.Ct. at 2186.

■ Smith had no physical ties to Texas. The joint venture agreement was signed in Florida and mailed to Advanced Concrete at its manufacturing plant and warehouse in Shreveport, Louisiana. Nevertheless, the joint venture was formed for the sole purpose of building a hotel in Texas, and the elevator contract is related directly to the hotel enterprise. Despite the fact that the hotel was not built, a building permit was issued for the project, the elevator contract was executed and the products under that contract were manufactured and delivered to Texas. The purpose of the joint venture was wholly performable in Texas and the contract with Double W, the property owner, was wholly performable in Texas. The parties anticipated a profit from the construction of the hotel in Texas,

and the benefits and protections of the laws of this State, as well as the City of Austin, were called into play. It cannot be said that because of the sequence of events such contacts are "random," "fortuitous," or "attenuated," *Burger King Corp.,* 105 S.Ct. at 2186; nor can it be said that Smith could not anticipate being haled into court in Texas for alleged damages arising out of the hotel project, irrespective of whether project negotiations were finalized and the hotel actually was completed. Since mid-August of 1983, Smith purposefully directed its activities toward Texas residents; numerous contract negotiations for the construction of the hotel and all future consequences of the parties' course of action were directed toward Texas. The elevator contract was just one intermediate step toward finalizing the project, which was the real object of the business transaction. The due process clause may not be wielded as a territorial shield to avoid interstate obligations that have been assumed voluntarily. *Burger King Corp.,* 105 S.Ct. at 2183.

■ Smith also argues that jurisdiction does not attach because the joint venture agreement fails as a matter of law because the agreement does not meet the proper elements of a joint venture. Whether the joint venture agreement in fact creates a joint venture goes to the question of liability for the alleged breach, and not to the question of jurisdiction.

■ No findings of fact and conclusions of law were requested of or filed by the trial court; thus, all questions of fact will be presumed and found in support of the judgment. *Lassiter v. Bliss,* 559 S.W.2d 353, 358 (Tex.1977). However, findings of fact, though unchallenged, are not conclusive on appeal when, as in this cause, a statement of facts appears in the record. *Swanson v. Swanson,* 148 Tex. 600, 603, 228 S.W.2d 156, 158 (1950); *Uvalde County v. Barrier,* 710 S.W.2d 740, 743 (Tex. App.—San Antonio 1986, no writ); *Rosetta v. Rosetta,* 525 S.W.2d 255, 260 (Tex.Civ. App.—Tyler 1975, no writ). Moreover, the rule of implied findings of fact in support of the judgment cannot be invoked when

the evidence establishes as a matter of law the issue to be determined. *Lockhart v. Garner,* 156 Tex. 580, 583, 298 S.W.2d 108, 110 (1957).

In the instant cause, the only fact in dispute is whether the City of Austin issued a building permit to the joint venture. For the sole purpose of determining jurisdiction, that fact is presumed to favor the trial court's judgment that sufficient contacts with the forum are lacking. Based on the remaining facts before the court, we hold as a matter of law that Zac Smith & Co. had sufficient contacts with Texas for personal jurisdiction to attach.

The judgment of the court of appeals is affirmed and this cause is remanded to the trial court for trial on the merits.

ROBERTSON, J., dissents in an opinion joined by RAY and WALLACE, JJ.

ROBERTSON, Justice, dissenting.

I respectfully dissent. The crucial issue here is whether this foreign corporation has enough contacts with the forum to satisfy the requirements of due process. *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). The nonresident corporate defendant must have sufficient minimum contacts with the forum state so that the maintenance of a suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). If Zac Smith & Co.'s contacts with the State of Texas are insufficient to satisfy due process requirements then the case should be reversed. *See Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 419–20, 104 S.Ct. 1874–1875 (1984). The "quality and nature" of Smith's contacts with Texas must be examined and weighed against the "fair and orderly administration of the laws." *Shaffer,* 433 U.S. at 204, 97 S.Ct. at 2579. Finally, it must be determined whether Smith could reasonably anticipate being brought into court in Texas. *World-Wide Volkswagen*

*Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

The majority here recognizes that Smith has a single or a few contacts with the forum and has "no physical ties to Texas" but determines nevertheless, that sufficient contacts exist to support the jurisdiction. The majority, however, cannot justify the finding of jurisdiction precisely because Smith's contacts with the forum are certainly "attenuated." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 2186, 85 L.Ed.2d 528 (1985). The due process clause is not being used here as a shield to avoid its obligations but rather as the guaranteed protection against a suit which offends the traditional notions of fair play. *Burger King Corp.,* 105 S.Ct. at 2183. Specifically in this case, the contacts the majority argues are sufficient to gain jurisdiction are solely the result of attenuated contacts. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984).

The only contact that Smith has with Texas is a proposed joint venture agreement with Advanced Concrete which was specifically conditioned on the satisfactory and sufficient bonding of the project. No bond was ever issued and the joint venture agreement was never consummated. Furthermore, the contract for the elevators, which is the center of this litigation, was solely between Otis Engineering and Advanced Concrete. Smith did not ratify the contract and Smith was not even associated with Advanced Concrete until after the contract was created.

This case is most like the *Helicopteros* case in terms of the contacts of the nonresident defendant with the forum and should be decided accordingly. I would reverse the judgment of the court of appeals and hold that Zac Smith & Company has insufficient minimum contacts with Texas in order to maintain jurisdiction.

RAY and WALLACE, JJ., join in this dissent.