

# IN THE
# TENTH COURT OF APPEALS

## No. 10-08-00077-CV

REBECCA SCHULTZ,

Appellant

v.

SCOTT TAYLOR AND KIMBERLY TAYLOR,

Appellees

From the County Court at Law No. 1
McLennan County, Texas
Trial Court No. 20070441 CV1

## MEMORANDUM OPINION

Raising five issues, Rebecca Schultz appeals the trial court's judgment in favor of Scott and Kimberly Taylor (the Taylors) in their lawsuit to recover a "security deposit." We will affirm.

On February 22, 2005, Schultz and the Taylors signed an agreement entitled "RESIDENTIAL LEASE," a fourteen-page preprinted form with handwritten additions and deletions. The agreement states that Schultz, "the owner of the Property, Landlord," leases to the Taylors, "Tenant(s)," the real property located at 10004 Polo

Park Cir in McLennan County, Texas; that the primary term of the lease begins on February 22, 2005 and ends on February 22, 2007; and that the monthly rent is $1,900. The agreement includes a section entitled "SECURITY DEPOSIT." It provides, "A. Security Deposit: On or before execution of this lease, Tenant will pay a security deposit to Landlord in the amount of $*10,000*. 'Security deposit' has the meaning assigned to that term in § 92.102, Property Code."[1] However, "non-refundable" has been written just below these two sentences. Nevertheless, the preprinted language goes on to state, "C. Refund: Tenant must give Landlord at least thirty (30) days written notice of surrender before Landlord is obligated to refund or account for the security deposit."

The agreement also includes a section entitled "SPECIAL PROVISIONS," in which the following is handwritten:

(1) This is an owner-finance property. Sold as-is for $199000.00. $10,000 down payment. $2000.00 at signing (2/22/2005) $8000.00 due in 90 days (5/22/2005), otherwise re-negotiated by seller & buyer by (8/22/2005)

(2) Buyer will obtain own financing by March 07 for a sales price of 186425.00. If for some reason buyer cannot obtain own financing, we will renegociate [sic] owner financing at that time. Reguardless [sic] of how financing is settled, buyers are purchasing home.

In several sections of the agreement, the handwritten term "buyers" has also been added to the agreement. For example, after the subsection addressing pool/spa maintenance, the handwritten phrase "maintained by buyers" has been inserted.

---

[1] The handwritten addition to the preprinted language of the agreement is italicized.

Schultz testified as follows during the bench trial of the case: The agreement was prepared by a friend of hers who is a realtor. She told her friend that she and the Taylors were "doing a lease-to-own." The Taylors were not able to obtain financing; therefore, she told them that she would give them two years to resolve their credit issues. She stated, "That way they will be able to get the financing at that time and be able to make the purchase of the home."

On the other hand, Schultz believed that at the time the Taylors signed the agreement, they had purchased the property from her. She stated, "[T]hey could not initially get the mortgage themselves, so they needed me to owner finance it for them until they could clear up their credit" and obtain their own financing. She testified that although the agreement provides that the Taylors were to pay $1,900 per month in rent to her, the Taylors were actually making a mortgage payment to her, which was the same amount as her own monthly mortgage payment on the property. Her realtor friend added the word "non-refundable" in the "SECURITY DEPOSIT" section of the agreement because Schultz was selling the property to the Taylors, and the $10,000 was a non-refundable down payment.

Schultz received the $10,000 down payment from the Taylors over the course of about six months. She received $2,000 when the agreement was signed, and although she did not receive all of the remaining $8,000 by May 22, 2005, as stated in the agreement, Schultz and the Taylors signed an addendum to the agreement, allowing for the remaining balance to be fully paid by October 15, 2005. The addendum states:

> The balance of $3200.00 for the initial $10000.00 down payment was not paid as was stated in the contract.
>
> Rebecca Schultz, has agreed to accept $1500.00 on August 31, 2005, with the condition that the remaining balance of $1700.00 is paid by October 15th. (Giving the Taylors an extra month and a half).
>
> If the $1700.00 is not paid by this date, the Taylors, are aware that no further extensions will be given , [sic] they will become month to month tenants, and have agreed to move out by the end of October.

The final payment was received by Schultz on October 16, 2005, and she accepted it.

Schultz subsequently received the $1,900 monthly payments from the Taylors through August 2006; however, at the beginning of that month, the Taylors advised her that they were not making any more payments because they could no longer afford it and were moving out. Schultz stated that the Taylors asked for their down payment back but that she told them she "wasn't going to be able to do that." She never sent any letter to the Taylors referencing a security deposit.

Schultz testified that, on September 15, 2006, her lawyer then sent the Taylors a "Notice to Cure Default" because Schultz had not received the $1,900 payment for September. The notice states that it is regarding the "RESIDENTIAL LEASE WITH PURCHASE OPTION." A second notice entitled "Notice of Cancellation of Contract for Deed" was then sent to the Taylors on October 15, 2006. Again, the notice states that it is regarding the "Residential Lease with Purchase Option"; however, the substantive language of the notice states:

> You failed to cure the defaults set out in Seller's notice of default mailed September 15, 2006, within the permitted cure period.

The Contract for Deed is now canceled, and your interest under the contract and in the Property is now forfeited. Seller will retain all money previously paid under the contract as liquidated damages, as provided in the contract. Seller gives notice that you must vacate within three (3) days, if you are still in possession of the Property.

Schultz received something from the Taylors two or three months after they had left, but she does not "remember what the particulars were." At the end of September 2006, new tenants moved into the house located on the property, and their lease began on October 1. The new tenants were month-to-month tenants and lived there approximately three months. Schultz had no more tenants after they left, and the property eventually went into foreclosure.

Kimberly Taylor testified that the agreement that she signed was a lease with an option to buy. She paid the $10,000 security deposit through several payments, ending on October 16, 2005. Although she and her husband referred to the payments on their checks as applying toward the down payment on the house, the $10,000 was just a deposit. If they decided to purchase the house, then the money would serve as a down payment; however, before the purchase, the money was just a deposit.

Taylor and her husband started trying to obtain financing in July 2006. They qualified for a loan, and the mortgage payment would have been less than what they had been paying in rent; therefore, they began talking to Schultz because they were ready to buy the house. When asked why they did not buy the house, she stated, "We just couldn't work anything out. We just weren't able to come to terms with anything." In the latter stages of the negotiations, Schultz told them they could leave the house. Taylor stated that Schultz said, "Just go ahead and move."

When Taylor received the September notice from Schultz, she and her husband looked at the house again, thinking they might still be able to purchase the home. However, they saw people moving into the house at that time. Nevertheless, she sent a certified letter to Schultz's attorney, stating that she wanted to "settle all the debt, whatever she is saying we owed," and buy the house. She did not send any payments with the letter or a copy of a loan commitment. She never heard from Schultz or her attorney about being able to cure the default. She also never received any letter related to any sort of security deposit.

The trial court entered a judgment in favor of the Taylors for $8,100 with prejudgment interest at 4.52% from the date the suit was filed together with all costs of court. The trial court filed the following relevant findings of fact and conclusions of law:

*FINDINGS OF FACT:*

1. The fourteen (14) page written agreement signed by both of the parties and admitted into evidence in this case is a Residential Lease containing an Option to Purchase.

2. Pursuant to that Lease Agreement, the Plaintiffs paid and the Defendant received a security deposit in the amount of Ten Thousand and 00/100 Dollars ($10,000.00).

3. The Plaintiffs never exercised the purchase option contained in the Lease.

. . .

5. The Plaintiffs met the statutory prerequisites for return of the security deposit.

. . .

10. The Defendant is entitled to a credit in the amount of one (1) months rent for the period after the Plaintiff's vacated the premises in the amount of One Thousand Nine Hundred and 00/100 Dollars ($1900.00).

11. None of the other provisions in the Lease Agreement concerning a purchase or a possible purchase of the premises are relevant to this Judgment.

. . .

*CONCLUSIONS OF LAW:*

. . .

6. The Defendant is entitled to an offset in the amount of One Thousand Nine Hundred and 00/100 Dollars ($1900.00).

. . .

In her first four issues, Schultz contends that there is no evidence or, alternatively, insufficient evidence to support the trial court's findings of fact numbers two, three, five, and eleven.

Findings of fact in a bench trial have the same force and dignity as a jury's verdict upon jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). Findings are not conclusive on appeal when a reporter's record is part of the appellate record, as there is here. *Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 666 (Tex. 1987); *Wells Fargo Bank, N.A. v. Citizens Bank of Tex., N.A.*, 181 S.W.3d 790, 796 (Tex. App.—Waco 2005, pet. denied). Although we show deference to a trial court's findings, those findings are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing evidence supporting a jury's answers. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Wells Fargo Bank*, 181 S.W.3d at 796.

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g).

Schultz's first four issues center on whether the $10,000 payment is characterized as the security deposit for the lease or as the down payment toward the purchase price

of the property.[2]  Schultz argues that the $10,000 she received was the down payment and that she never received the security deposit.  The Taylors respond that the $10,000 was a security deposit that would have been used as a down payment if they had exercised the option to purchase the property but that the agreement was terminated before they exercised the option.

In construing a written contract, the primary concern is to ascertain and give effect to the parties' intentions as expressed in the document.  *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311-12 (Tex. 2005).  Deciding whether a contract is ambiguous is a question of law for the court.  *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) (citing *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983)).  A contract is unambiguous if it can be given a definite or certain legal meaning.  *Id.*  On the other hand, if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous.  *Id.*; *Coker*, 650 S.W.2d at 393-94.

The agreement in this case is entitled "RESIDENTIAL LEASE" and contains common terms of a residential lease, including the requirement of a security deposit. However, in the "SPECIAL PROVISIONS" section of the agreement, the parties are referred to as "seller" and "buyer," and the language reads, "This is an owner-finance property.  Sold as-is for $199000.00."  Furthermore, in the "SECURITY DEPOSIT" section itself, there is a provision that states what the tenant must do to be entitled to

---

[2] The parties do not dispute that the Taylors paid and Schultz received one $10,000 payment over a period of several months beginning when the agreement was signed.

the refund of his security deposit, yet the handwritten word "non-refundable" has also been added to the section. The agreement is thus ambiguous, and when the contract language is ambiguous, the intended meaning of the contract language becomes a fact issue for the trier of fact and extraneous evidence can be considered to determine the language's meaning. *See J.M. Davidson*, 128 S.W.3d at 229; *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995); *Coker*, 650 S.W.2d at 394-95.

Schultz has not challenged the sufficiency of the evidence to support the trial court's finding that the agreement is a residential lease containing an option to purchase, despite her testimony during the trial that the Taylors were purchasing the property from her by entering into the agreement. The evidence is thus legally and factually sufficient to support the trial court's finding (No. 2) that one $10,000 payment was required under the agreement and that it would serve as a security deposit until the Taylors exercised the option to purchase the property, in which case it would serve as a down payment.

The evidence is also legally and factually sufficient to support the finding (No. 3) that the Taylors had not yet exercised the purchase option contained in the agreement, and thus, the $10,000 was still serving as a security deposit. The evidence indicates that the Taylors moved out of the house sometime in August 2006, and that the agreement states that the primary term of the lease does not end until February 22, 2007. Also, in the "SPECIAL PROVISIONS" section of the agreement, the language reads, "Buyer will obtain own financing by March 07 for a *sales price* of 186425.00." (Emphasis added.)

Based on the foregoing, we conclude that the evidence is both legally and factually sufficient to support the trial court's finding that the $10,000 payment at issue in this case was a security deposit. Thus, the evidence is legally and factually sufficient to support the trial court's findings of fact numbers two, three, five, and eleven. Schultz's first four issues are overruled.

In her fifth issue, Schultz contends that the trial court erred in limiting her credit to one month's rent. She explains that she was able to secure a month-to-month tenant for October, November, and December 2006; however, she did not have a tenant for January and February 2007. Schultz argues that she thus should be entitled to an offset of an additional two months. However, the October 2006 "Notice of Cancellation of Contract for Deed" cancelled the contract and gave notice to the Taylors to vacate the property within three days, if they were still in possession of the property. Thus, the trial court did not err in limiting Schultz's credit to one month's rent. Schultz's fifth issue is overruled.

Having overruled all Schultz's issues, we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
    Justice Reyna, and
    Justice Davis
    (Chief Justice Gray concurs in the Court's judgment. A separate opinion will not issue. He notes, however, that the Court's judgment, and his joinder therein, is limited to the issues tried to the trial court and the issues as then presented to this Court.)
Affirmed
Opinion delivered and filed April 14, 2010
[CV06]