ACCEPTED
03-15-00348-CV
7134189
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/28/2015 5:14:21 PM
JEFFREY D. KYLE
CLERK

**No. 03-15-00348-CV**

_____

COURT OF APPEALS
THIRD JUDICIAL DISTRICT OF TEXAS
AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
9/28/2015 5:14:21 PM
JEFFREY D. KYLE
Clerk

_____

TODD ENRIGHT,

*Appellant*,

v.

ASCLEPIUS PANACEA, LLC; ASCLEPIUS PANACEA GP, LLC; DAILY
PHARMACY, LLC; DAILY PHARMACY GP, LLC; AND TOTH
ENTERPRISES II, P.A. D/B/A VICTORY MEDICAL CENTER,

*Appellees*.

_____

**REPLY BRIEF OF APPELLANT
TODD ENRIGHT**

_____

On Appeal from the 98th Judicial District Court
of Travis County, Texas
Trial Court No. D-1-GN-14-004689
Hon. Gisela D. Triana of the 200th Judicial District Court, Presiding

_____

Thomas S. Leatherbury
  State Bar No. 12095275
Vinson & Elkins LLP
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201
Telephone:  (214) 220-7700
Facsimile:  (214) 999-7792
tleatherbury@velaw.com

Jennifer B. Poppe
  State Bar No. 24007855
Jonah Jackson
  State Bar No. 24071450
Vinson & Elkins LLP
2801 Via Fortuna, Suite 100
Austin, Texas 78746
Telephone:  (512) 542-8400
Facsimile:  (512) 542-8612
jpoppe@velaw.com
jjackson@velaw.com

*Attorneys for Appellant Todd Enright*

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

ARGUMENT .....................................................................................................1

I.    VMC's response fails to identify any evidence that is legally or factually sufficient to support the trial court's implied findings of fact. ...........2

    A.    The evidence that VMC rely on for their pre-transaction claims is legally and factually insufficient. ...........................................................3

    B.    The evidence of Enright's contacts with Texas occurring *after* the transaction that VMC rely on is insufficient to support personal jurisdiction over Enright for their post-transaction claims. .......................5

II.    VMC also fail to demonstrate how the exercise of personal jurisdiction over Enright would satisfy due process guarantees. ..........................................9

    A.    VMC's allegations do not satisfy the requirement that Enright purposefully availed himself of any benefit of doing business in Texas. ..................................................................................................9

        1.    VMC misconstrue precedent in arguing that the alleged communications between Enright and Franklin support purposeful availment. ....................................................................10

        2.    VMC's alleged evidence of a personal interest by Enright in the TSA is insufficient to show Enright obtained any "benefit, advantage, or profit" under Texas law. ...........................................11

    B.    VMC fail to demonstrate the necessary substantial connection between Enright's Texas contacts and any alleged tortious conduct. ..........................................................................................12

        1.    All of the contacts with Texas by Enright identified by VMC are unrelated to their post-transaction claims. .................................13

        2.    A merits hearing is not required for a finding that Enright's Texas contacts are not substantially connected to any tortious conduct because all of VMC's claims fail as a matter of law. .........15

    C.    VMC do not address or explain how their avoidance of mandatory jurisdiction in Massachusetts would comport with traditional notions of fair play and substantial justice. ..............................................15

CONCLUSION AND PRAYER .......................................................................17

i

CERTIFICATE OF COMPLIANCE.......................................................................18

CERTIFICATE OF SERVICE ..............................................................................19

# TABLE OF AUTHORITIES

**Cases**

*BMC Software Belgium, N.V. v. Marchand*,
83 S.W.3d 789 (Tex. 2002)..................................................................................3

*Camac v. Dontos*,
390 S.W.3d 398 (Tex. App.—Dallas 2012, reh'g denied) ...............................3, 4

*In re Int'l Profit Assocs., Inc.*,
274 S.W.3d 672 (Tex. 2009)................................................................................16

*Kelly v. Gen. Interior Constr., Inc.*,
301 S.W.3d 653 (Tex. 2010)...................................................................... passim

*Michiana Easy Livin' Country, Inc. v. Holten*,
168 S.W.3d 777 (Tex. 2005)............................................... 9, 10, 11, 15

*Moki Mac River Expeditions v. Drugg*,
221 S.W.3d 569 (Tex. 2007)...........................................................................9, 13

*Moncrief Oil International Inc. v. OAO Gazprom*,
414 S.W.3d 142 (Tex. 2013).........................................................................3, 4

*TeleVentures, Inc. v. Int'l Game Tech.*,
12 S.W.3d 900 (Tex. App.—Austin 2000, pet. denied) ............................... 10, 11

*Zac Smith & Co., Inc. v. Otis Elevator Co.*,
734 S.W.2d 662 (Tex. 1987)..............................................................................11

# ARGUMENT

Appellees' Brief (***Response***) fails to identify legally or factually sufficient evidence in support of the trial court's implied findings of fact and misapplies established precedent concerning due process requirements. As a result, VMC[1] are unable to provide any ground to affirm the trial court's assertion of personal jurisdiction over Appellant Todd Enright (***Enright***). First, VMC rely on vague and irrelevant evidence that does not amount to more than a scintilla of support for the court's implied findings that (1) Enright made misrepresentations to VMC in relation to VMC's purchase of two pharmacy locations from QVL[2] or (2) Enright took any action to interfere with the Transition Services Agreement (***TSA***) between VMC and QVL after the transaction was completed. Second, VMC's unpersuasive argument that Enright's contacts with Texas satisfy the purposeful availment requirement and are substantially connected to VMC's claims is based on VMC's misreading of the Texas Supreme Court's and this Court's precedent.

Because (1) the trial court's order is not supported by evidence in the record, and (2) the exercise of jurisdiction over Enright would violate due process, this Court should reverse the order denying Enright's special appearance and dismiss

---

[1] Consistent with Enright's opening brief, Appellees Asclepius Panacea, LLC; Asclepius Panacea GP, LLC; Daily Pharmacy, LLC; Daily Pharmacy GP, LLC; and Toth Enterprises II, P.A. d/b/a Victory Medical Center are referred to collectively as "***VMC***."

[2] Consistent with Enright's opening brief, Defendants QVL Pharmacy #181 GP, LLC; QVL Pharmacy #162 GP, LLC; and QVL Pharmacy Holdings, Inc. a referred to collectively as "***QVL***."

1

VMC's claims against Enright for lack of personal jurisdiction. *See Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010).

## I. VMC's response fails to identify any evidence that is legally or factually sufficient to support the trial court's implied findings of fact.

VMC's Response relies on unsupported assertions and implausible inferences to defend the trial court's erroneous order. As set forth in Enright's opening brief and ignored in VMC's Response, the evidence before the court was insufficient to support the court's assertion of personal jurisdiction over Enright. The Texas long-arm statute, requires that the defendant's acts "giving rise" to the claims occurred in Texas.[3] *Kelly*, 301 S.W.3d at 660. When challenged by the defendant, the plaintiff "must . . . present evidence that the [defendant]'s relevant acts (i.e., those connected to [plaintiff]'s claims) occurred, at least in part, in Texas." *Id.* at 660-61. With respect to both their pre-transaction claims (fraud and securities fraud) and post-transaction claims (tortious interference, conversion, money had and received, and action for accounting), there is insufficient evidence

---

[3] The undisputed fact that Enright is not a resident of Texas is by itself sufficient to negate personal jurisdiction because VMC failed to explain in their pleadings, other than through conclusory statements, how any of the allegedly tortious conduct took place in Texas. *See Kelly,* 301 S.W.3d at 658-59 ("If the plaintiff fails to plead facts bringing the defendant within reach of the long-arm statute (i.e., for a tort claim, that the defendant committed tortious acts in Texas), the defendant need only prove that it does not live in Texas to negate jurisdiction.").

2

to support the court's implicit conclusion, that any relevant contact occurred in Texas.[4]

### A. The evidence that VMC rely on for their pre-transaction claims is legally and factually insufficient.

In arguing Enright is subject to specific jurisdiction under the long-arm statute, VMC erroneously rely on *Moncrief Oil International Inc. v. OAO Gazprom*, 414 S.W.3d 142 (Tex. 2013), and *Camac v. Dontos*, 390 S.W.3d 398 (Tex. App.—Dallas 2012, reh'g denied). Resp. Br. at 15-16. In both cases, the plaintiffs provided evidence showing that the defendants committed multiple acts within Texas that were the basis of the plaintiffs' claims. *See Moncrief*, 414 S.W.3d at 154 (holding that evidence "the Gazprom Defendants attended the two Texas meetings where they accepted the alleged trade secrets regarding a proposed Texas joint venture, which is the crux of the matter," satisfied the Texas long-arm statute); *Camac*, 390 S.W.3d at 408, 411 (finding sufficient evidence that the defendant committed relevant acts in Texas based on "specific allegations" of misrepresentations and fraudulent statements during meetings in Texas and

---

[4] When, as here, the trial court does not issue findings of fact or conclusions of law, "all facts necessary to support the judgment and supported by the evidence are implied." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). However, the trial court's implied findings are not conclusive, and "may be challenged for legal and factual sufficiency." *Id*.

3

"*constant and systematic* calls and e-mails to and from Texas regarding the acquisition" (emphasis added)).

The evidence relied on by VMC lacks both the specificity and weight of the evidence supporting personal jurisdiction in *Moncrief* and *Camac*. Unlike those two cases, the sole basis for personal jurisdiction on the pre-transaction claims is the testimony of a single witness that Enright made unspecific "misrepresentations" in unidentified phone calls. Resp. Br. at 17. Neither *Moncrief* nor *Camac* stands for the proposition that vague and unspecific allegations of "misrepresentations" are legally sufficient evidence to support the assertion of personal jurisdiction. The Texas Supreme Court has made clear that alleging claims of wrongdoing without providing evidence that the defendant's *relevant* acts occurred in Texas is insufficient to bring the defendant within the reach of the long-arm statute. *Kelly*, 301 S.W.3d at 656-57, 659.

VMC's allegation of "fraudulent misrepresentations Enright made on multiple phone calls about the sale and how the TSA would be carried out" is not supported by the evidence. Resp. Br. at 17. VMC's limited evidence—a conclusory affidavit by Franklin—provides little more than a bare assertion that Enright made fraudulent representations. App. Br. at 28-29. In his affidavit, Franklin only vaguely discusses the general content of his calls with Enright and

4

does not identify a single specific statement by Enright.[5] App. Br. at 28-29. VMC's claim that "Franklin's affidavit details the fraudulent misrepresentations" is belied by Franklin's actual quotes from that affidavit. Resp. Br. at 17. Alleged statements by Enright that VMC's future drug purchases would be "no trouble" or that their deposits would be made into a lockbox hardly qualify as misrepresentations, let alone specific misrepresentations. CR438-39 (¶¶ 5, 6). Nor do VMC offer any documentary or corroborating evidence of alleged misrepresentations. Thus, the evidence of a tortious act "in Texas" is both legally and factually insufficient to support personal jurisdiction over Enright for the pre-transaction claims.

**B. The evidence of Enright's contacts with Texas occurring *after* the transaction that VMC rely on is insufficient to support personal jurisdiction over Enright for their post-transaction claims.**

VMC's Response also fails to identify any tortious post-transaction conduct by Enright that took place in Texas. There is no evidence that Enright tortiously interfered with the TSA or that he took any action *in Texas* that could plausibly

---

[5] VMC's claim that Enright did not sufficiently deny Franklin's assertions is incorrect. Resp. Br. at 16-17. Enright's denial is implicit in his testimony that the conversations never even took place. CR210 (¶ 6). Moreover, VMC's implication that Enright tacitly admitted something by failing to respond to Franklin's testimony is disingenuous—Enright's affidavit was drafted and filed before VMC ever submitted Franklin's testimony.

5

relate to VMC's tortious interference claim.[6] Because the record does not contain sufficient evidence that Enright committed any tortious act, let alone a tortious act *in Texas* as required by the Texas long-arm statute, the exercise of jurisdiction is improper. *See Kelly*, 301 S.W.3d at 659.

First, VMC failed to address and apparently do not dispute that (1) QVL did not have any credit available when the check was presented, and (2) Enright had no power as an individual to extend or withhold credit. App. Br. at 30-31. As explained in Enright's opening brief, QVL's ability to pay any debt through its line of credit, including payments to VMC, depended on at least two factors—(1) the availability of credit, and (2) the approval of two people at White Winston to advance that credit. App. Br. at 31. Thus, Enright's communications with QVL, which is the sole focus of VMC's argument, are not evidence of any tortious conduct. VMC's secondary argument, that Enright had "control" over QVL, and this "control" gave him the power as an individual to extend or withhold credit from QVL, is equally irrelevant. Resp. Br. at 16-18; 24-25. The bare assertion that Enright had "control"—without any further explanation—is no evidence of that Enright tortiously prevented QVL from paying VMC through actions *in Texas*.

---

[6] In addition to tortious interference, VMC assert claims for conversion and money had and received. Resp. Br. at 30-31. It is unsurprising that VMC are unable to point to any evidence to support personal jurisdiction over these claims, because the record is completely devoid of any evidence that Enright "exercised dominion or control" over VMC's property or that he "holds money" that belongs to VMC anywhere, let alone in Texas. *Id*.

6

Second, even if Enright's conduct were somehow tortious, VMC have failed to explain how Enright's conduct has any relevant connection with Texas. VMC's arguments that there is ample evidence of Enright's acts within Texas completely miss the mark. It is not sufficient to allege both that a tort was committed and that the nonresident defendant had various contacts with Texas to confer jurisdiction, unless the "acts giving rise to [the] claims occurred in Texas." *Kelly*, 301 S.W.3d at 669-60 (holding that although the contract was to be performed exclusively in Texas and the defendants sent and directed payments to Texas, received invoices from Texas, and visited Texas, the nonresident defendant was not subject to jurisdiction in Texas because these contacts were insufficient to show that the defendant "committed any tortious acts in Texas"). Enright's communications with QVL in Texas, which consist of discussions of QVL's requests for advances on its line of credit and discussions related to Franklin's threats to sue Enright and his employer, White Winston, are not even a scintilla of evidence, let alone factually sufficient evidence, to satisfy *Kelly*.

In their Response, VMC allege that Enright "personally directed QVL's agents in Texas on how to carry out the TSA, including: (a) what charges QVL was to bill VMC for; (b) what amounts of VMC's funds should be paid and when; and (c) what 'game plan' QVL's attorney in Texas should execute to explain withholding VMC's funds." Resp. Br. at 16. Additionally, VMC point to

7

Enright's alleged "supervision and direction of QVL's attorney, Montgomery, Gonzales and Collins in connection with the TSA," as well as "2014 emails wherein [Enright] gave QVL's attorney and the bookkeepers specific directions on what amounts to pay VMC and when, and what to tell VMC about the TSA." *Id.* at 18. VMC's claim that the evidence in the record supports these speculative conclusions is simply not borne out by the actual content of Enright's communications. Far from the Machiavellian interpretation imputed by VMC, the communications reflect QVL's discussions with its creditor, White Winston, about how to manage its credit facility and pay its debts, including those to VMC. Enright was involved in those discussions as White Winston's agent, and these communications are no evidence that Enright personally interfered with the TSA, let alone that he interfered in Texas.

As in *Kelly*, VMC have failed to show that a tortious act was committed in Texas. *Kelly*, 301 S.W.3d at 660. In fact, the evidence establishes the opposite— that Enright could not have interfered with the TSA because QVL's payments to VMC depended on factors outside Enright's control and took place entirely outside of the State of Texas.

**II. VMC also fail to demonstrate how the exercise of personal jurisdiction over Enright would satisfy due process guarantees.**

Even assuming that VMC's conclusory factual assertions were all true, the exercise of jurisdiction over Enright in Texas is still improper because it would violate due process guarantees. VMC's arguments provide no support for the trial court's erroneous conclusion that Enright purposefully availed himself of the privilege of conducting activities in Texas and that VMC's claims arise from or relate to Enright's contacts. *See Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 576 (Tex. 2007). Finally, even if the minimum contacts and substantial relation requirements were satisfied, VMC's blatant attempt to avoid mandatory jurisdiction in Massachusetts through artful pleading is a violation of the "traditional notions of fair play and substantial justice." *See id.* at 575 (citation omitted).

**A. VMC's allegations do not satisfy the requirement that Enright purposefully availed himself of any benefit of doing business in Texas.**

VMC make two errors in arguing that Enright purposefully availed himself of the privilege of doing business in Texas. Resp. Br. at 21-26. First, VMC erroneously rely on contacts other than those between Enright and the forum state. Resp. Br. at 21-22. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005) (holding "it is only the defendant's contacts with the forum

that count").  And second, VMC fail to establish that Enright "availed" himself of the jurisdiction by "seek[ing] some benefit, advantage, or profit."  *Id.*

1.  *VMC misconstrue precedent in arguing that the alleged communications between Enright and Franklin support purposeful availment.*

VMC contravene *Michiana* and *TeleVentures* when they rely on communications between QVL's president, Chad Collins and VMC's representative, Dr. Franklin.  Resp. Br. at 21.  Both *Michiana* and *TeleVentures* plainly hold that this Court should focus **solely** on the contacts between Enright and Texas—and **not** on the contacts between Texas and any third-parties, such as Collins or Franklin.  *See Michiana*, 168 S.W.3d at 785; *TeleVentures, Inc. v. Int'l Game Tech.*, 12 S.W.3d 900, 912 (Tex. App.—Austin 2000, pet. denied) (holding the focus "in analyzing minimum contacts for purposes of Texas courts' specific jurisdiction" is "on the relationship among the nonresident defendant, the forum, and the litigation").

As VMC concede, Enright did not initiate contact with Franklin in Texas.  That contact was initiated by Chad Collins and QVL.  Resp. Br. at 21; *see* App. Br. at 16; CR362 (deposition of Collins, in which he states that he spoke with Franklin initially, and then they organized a conference call with Enright).  VMC's attempt to distinguish this case from *Michiana* and *TeleVentures*, in which both courts held that the defendant's contacts did not show purposeful availment when the

10

defendant did not initiate the transaction, misses the mark. The critical factor in *Michiana* was not that the *plaintiff* initiated the contact, but rather that someone other than the defendant did. *See Michiana*, 168 S.W.3d at 793-94; *see also TeleVentures*, 12 S.W.3d at 912. In this case, VMC concede that Collins and QVL initiated the contact with White Winston, and thus Enright's contacts with Texas in relation to the transaction do not constitute purposeful availment.[7]

  2. *VMC's alleged evidence of a personal interest by Enright in the TSA is insufficient to show Enright obtained any "benefit, advantage, or profit" under Texas law.*

VMC's assertion that Enright had a personal interest in the TSA is pure speculation and, in any event, is insufficient to prove Enright obtained "some benefit, advantage, or profit" under Texas law, as required to meet the purposeful availment requirement. *Michiana*, 168 S.W.3d at 785, 789-90 (discussing cases finding specific jurisdiction when the contacts were "aimed at getting extensive business in or from the forum state"); *see also Zac Smith & Co., Inc. v. Otis Elevator Co.*, 734 S.W.2d 662, 664-66 (Tex. 1987) (finding that the defendant "purposefully availed" itself of the benefits and protections of the laws of Texas when the contract was formed "for the sole purpose of building a hotel in Texas").

---

[7] In fact, Collins testified that he initiated the contact at Franklin's request, CR346 (¶ 6), but even if Collins initiated the contact on his own volition, under *Michiana*, Collins's unilateral action cannot support a finding of purposeful availment by Enright.

11

VMC point to the following facts as indications that Enright had a personal interest in the transaction:

- Enright once referred to QVL's Austin location as "our licensed store." Resp. Br. at 22.

- Enright did not copy Collins on an email to Franklin following their phone call. *Id.*

- "Enright was not an employee, officer, or owner of White Winston," but instead works as a consultant. *Id*. at 23.

The inferential leap required to conclude from that evidence that Enright has a personal stake in QVL is incredible and does not provide any basis to conclude that Enright purposefully availed himself of Texas. One ambiguous email and the structure of Enright's employment agreements do not amount to even a scintilla of evidence that Enright sought to obtain the type of "benefit, advantage, or profit" that Texas courts have required to confer specific jurisdiction over a nonresident defendant.

**B.      VMC fail to demonstrate the necessary substantial connection between Enright's Texas contacts and any alleged tortious conduct.**

VMC spend a great deal of their Response listing alleged contacts that Enright had with Texas, but completely fail to explain how those contracts are substantially connected to VMC's claims. To exercise specific jurisdiction over a

12

nonresident defendant, there must be a "substantial connection between [the defendant's] contacts and the operative facts of the litigation." *Moki Mac*, 221 S.W.3d at 585. VMC's recitation of contacts fails to provide the necessary substantial connection for two reasons. First, Enright's contacts with Texas are unrelated to the facts underlying VMC's post-transaction claims. Second, Enright's contacts with Texas cannot be substantially related to *any* tortious conduct—either pre- or post-transaction claims—because all of VMC's claims fail as a matter of law. And contrary to VMC's contention, such a holding does not require a full merits hearing.

1. *All of the contacts with Texas by Enright identified by VMC are unrelated to their post-transaction claims.*

VMC devote most of their Response to either focusing on conduct that occurred outside of Texas or to listing various contacts by Enright with Texas that are unrelated to the facts underlying VMC's post-transaction claims—namely, that White Winston prevented QVL from making payments to VMC. VMC's list of alleged contacts by Enright with Texas divides into four categories: (1) Enright traveled to Texas; (2) Enright communicated with QVL employees; (3) Enright gave instructions to QVL regarding VMC's funds; and (4) Enright "controlled" QVL. Resp. Br. at 24-31.

13

The first two categories of alleged contacts do include contacts between Enright and Texas, but these contacts are unrelated to the alleged torts, which concern conduct related to White Winston's administration of QVL's credit facility. Enright pointed out—and VMC did not dispute—that "business communications with QVL and VMC and a handful of trips" are "not substantially connected to the alleged torts." App. Br. at 20. In their Response, QVL adds nothing to connect these Texas contacts to the alleged tortious conduct.

As to the third category of alleged contacts, the few contacts that could conceivably be related to the post-transaction claims took place outside of Texas. *See* App. Br. at 20. The allegations regarding instructions to QVL about VMC's funds are unrelated to any contacts with Texas, as the credit advances and requested credit all were made available through an account located in Boston. *See id*.

Regarding the fourth category, VMC's focus on Enright's alleged "control" over QVL is irrelevant as VMC fail to connect this "control" to their claim that Enright interfered with QVL's payments by failing to authorize credit advances. Thus, even if Enright's contacts demonstrate he had "control" over QVL, these contacts are unconnected to the actual substance of the claim and, therefore, fail the substantial connection requirement for personal jurisdiction.

14

2.      *A merits hearing is not required for a finding that Enright's Texas contacts are not substantially connected to any tortious conduct because all of VMC's claims fail as a matter of law.*

Contrary to VMC's assertion, this Court is not required to conduct a merits hearing in order to determine that Enright's special appearance should be granted because VMC's claims all fail as a matter of law. Without conducting a merits hearing, other Texas courts have evaluated whether a nonresident defendant may defeat jurisdiction by proving there was no tort. *See e.g., Michiana*, 168 S.W.3d at 790-91 (holding "[p]ersonal jurisdiction is a question of law for the court, even if it requires resolving questions of fact"). As Enright has already set forth in his opening brief and as explained above in Part I, VMC have failed to allege, let alone produce, any evidence of fraud or damages proximately caused by Enright's conduct. *See* App. Br. at 23-26. Without any evidence of a tort, VMC provide no basis for the trial court to have concluded that there was a "substantial connection" between VMC's claims and Enright's contacts as required by due process.

**C.      VMC do not address or explain how their avoidance of mandatory jurisdiction in Massachusetts would comport with traditional notions of fair play and substantial justice.**

Finally, VMC's Response does not address the violation of traditional notions of fair play and substantial justice inherent in their transparent attempt to avoid mandatory jurisdiction in Massachusetts by recasting their contract claims against White Winston as tort claims against Enright individually. Instead, VMC

15

spend their Response complaining that Enright did not address some of the factors that courts have used in this analysis.

Traditional notions of fair play and substantial justice are not served through permitting VMC to sue Enright (a New Hampshire resident) in his individual capacity in Texas, when the underlying claims are based on contracts with forum-selection clauses designating Massachusetts as the jurisdiction for suit. These concerns are strongly implicated here, in a case in which VMC have transformed contract claims into tort claims and failed to sue White Winston—all in an attempt to avoid mandatory jurisdiction in Massachusetts. But VMC do not even attempt to defend their actions to avoid the forum selection clauses at issue, presumably because they know that it is indefensible. The Texas Supreme Court has declined to follow a "slavish adherence" to the distinction between contract and tort claims, because "to hold to the contrary would allow a litigant to avoid a forum-selection clause with 'artful pleading.'" *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 677 (Tex. 2009) (citation omitted). Such "artful pleading" is evident in the case here. The notions of fair play and substantial justice do not support allowing VMC through "artful pleading" to avoid submitting to jurisdiction in Massachusetts at the expense of haling Enright to Texas to bear the cost of cross-country litigation over claims based on agreements in which the parties agreed to jurisdiction in Massachusetts.

16

## CONCLUSION AND PRAYER

Enright respectfully prays that this Court:

1.  Reverse the district court and grant Enright's special appearance;

2.  Dismiss VMC's claims against Enright for lack of personal jurisdiction;

3.  Award Enright the costs of this action; and

4. Grant such other and additional relief to which Enright has shown himself to be justly entitled, whether at law or in equity.

Respectfully submitted,

VINSON & ELKINS LLP

*/s/ Jennifer B. Poppe*
Thomas S. Leatherbury
State Bar No. 12095275
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201
Telephone: (214) 220-7700
Facsimile: (214) 999-7792
tleatherbury@velaw.com

Jennifer B. Poppe
State Bar No. 24007855
Jonah Jackson
State Bar No. 24071450
2801 Via Fortuna, Suite 100
Austin, Texas 78746
Telephone: (512) 542-8400
Facsimile: (512) 542-8612
jpoppe@velaw.com
jjackson@velaw.com

***Attorneys for Appellant Todd Enright***

17

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I hereby certify that this brief contains 3,821 words, excluding the words not included in the word count pursuant to Texas Rule of Appellate Procedure 9.4(i)(1).  This is a computer generated document created in Microsoft Word, using 14-point typeface for all text, except footnotes which are in 13-point typeface.  In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

*/s/ Jennifer B. Poppe*
Jennifer B. Poppe

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 28th day of September 2015, a true and correct copy of this brief was served on the following attorneys in accordance with the requirements of the Texas Rules of Appellate Procedure via electronic filing and email.

Eric J. Taube
Paul Matula
Taube Summers Harrison Taylor Meinzer Brown, LLP
100 Congress Avenue, 18th Floor
Austin, Texas 78701
etaube@taubesummers.com
pmatula@taubesummers.com

*/s/ Jennifer B. Poppe*
Jennifer B. Poppe

US 3785106v.9